*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 04-3074

MICHAEL E. JACKSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-00159—David D. Dowd, Jr., District Judge.

Argued: February 3, 2005

Decided and Filed: May 24, 2005

Before: GIBBONS and SUTTON, Circuit Judges; EDGAR, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Daniel S. Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Debra K. Migdal, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Daniel S. Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Joseph P. Schmitz, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellant. Debra K. Migdal, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellee Michael E. Jackson pled guilty to one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court granted Jackson's motion for a downward departure, departing eight levels from Jackson's base offense level. The district court sentenced Jackson to three years of probation, with a special condition of six months home confinement with electronic monitoring. The government appeals the district court's sentence, arguing that the court imposed an unreasonable sentence because the district court both failed to justify the decision to vary Jackson's sentence from the applicable guidelines range as well as the extent of the variance under 18 U.S.C. § 3553(a) and

---

[*]The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

also relied on factors which are considered to be either discouraged or prohibited under the now-advisory United States Sentencing Guidelines (U.S.S.G.).

For the following reasons, we vacate Jackson's sentence and remand the case to the district court for resentencing consistent with the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005).

## I.

On the evening of January 20, 2003, Youngstown police officers observed a blue Cadillac Sedan DeVille traveling at a high rate of speed and turning without using a signal. The officers stopped the car, driven by Jackson, who explained that he was speeding because he was on his way to check on a business alarm that had gone off in the area. When the officers looked in the car, they observed the butt of a handgun sticking out from under the driver's seat. The handgun was a Hi-Point 9 mm pistol with eight rounds of live ammunition. Jackson was arrested for carrying a concealed weapon and was issued a traffic citation for failure to use his signal before turning.

Following the arrest for the concealed weapon, Jackson was indicted on one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] On September 11, 2003, Jackson pled guilty to this count. Under the plea agreement, Jackson and the government agreed that the appropriate base offense level pursuant to U.S.S.G. § 2K2.1(a)(4) was twenty because Jackson had previously been convicted of a crime of violence. The government agreed not to oppose a reduction of three levels for Jackson's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).

The presentence investigation report calculated Jackson's total offense level to be seventeen and his criminal history category to be two. The presentence investigation report noted that the maximum term of imprisonment was ten years, and that Jackson's criminal history category and total offense level placed him within a Guidelines sentence range of twenty-seven to thirty-three months. On December 3, 2003, Jackson filed a motion with the court for a downward departure. Jackson sought a departure pursuant to U.S.S.G. § 5K2.0. Specifically, Jackson argued that (1) because he possessed the firearm only for purposes of self-defense, a downward departure was warranted pursuant to U.S.S.G. § 5K2.11 and *United States v. One Star*, 9 F.3d 60 (8th Cir. 1993); (2) his base offense level should more appropriately be considered fourteen rather than twenty, because although Jackson's previous crime was technically a crime of violence, it was more akin to a non-violent felony because it occurred during the course of Jackson's divorce, which was a difficult time period in his life; (3) he should be granted a downward departure due to the fact that Jackson is the primary caretaker of his grandmother, Cora Jackson; and (4) all of Jackson's circumstances, taken together, support a downward departure. Jackson's motion requested a departure from a base offense level of twenty to nine, which would allow the court to impose a sentence that did not include incarceration. On December 15, 2003, the government filed a response opposing Jackson's motion for a downward departure, arguing that none of Jackson's stated grounds warranted a departure below Jackson's applicable sentencing range.

At Jackson's December 16, 2003, sentencing hearing, the court announced that it had decided to grant a downward departure of eight levels. The court stated that it did not intend to

---

[1] At the time of the arrest, Jackson had committed the prior felony of attempted felonious assault. The prior conviction occurred in December of 1997 as a result of a dispute between Jackson and his ex-wife, Tina Jackson. During this dispute, Jackson rammed his car five times into another car driven by Alfonso Crim in which Tina Jackson was a passenger. Jackson chased Crim's car to a police station, where he was subsequently arrested. Jackson had also been convicted of assault in August of 1997 as a result of a dispute between Jackson, who was at that time employed as a Deputy Sheriff for Mahoning County, and an inmate at the jail. Jackson lost his job as a result of this incident.

"pars[e] out the departure," relying on the Eighth Circuit case of *One Star*, 9 F.3d at 60. The judge noted that his fourteen years of prosecutorial experience led him to believe that most defendants in criminal cases "cease criminal conduct by the time they're 35. This defendant is 40 . . . ." The court also noted that Jackson differed from many criminal defendants because he was employed and supported his children. The district court ultimately sentenced Jackson to three years of probation, including six months of electronically monitored home confinement.

The court issued a memorandum opinion on December 16, 2003, enumerating its reasons for granting the downward departure. The court found, relying on the reasoning set forth in *One Star*, 9 F.3d at 60, that a downward departure was warranted in this case based on the following factors:

> 1. Although the defendant was convicted of a crime of violence, i.e., ramming another motor vehicle five times, no one was injured in that accident.
> 2. The defendant did not use the weapon which he possessed and which was found under the front seat of his automobile in any criminal conduct other than the fact of his possession of the weapon as a convicted felon.
> 3. The court finds that the defendant had a reasonable belief that he was in danger when he purchased the firearm. [Footnote text]: The court takes judicial notice that the City of Youngstown, a city noted for its continuing violence, is not a safe environment, especially for persons of African-American descent. The defendant is, without question, an African-American.
> 4. The defendant, now aged 40, does not appear to be a dangerous person.
> 5. The defendant has strong family ties and provides meaningful financial support for his three children, none of whom live with him.
> 6. The defendant enjoys meaningful employment in a community that has suffered significant unemployment.
> 7. The defendant is the primary caregiver for his 89-year-old grandmother, who the Court finds to be infirm and needing the type of familial support provided by the defendant, who now lives with his grandmother.

The government filed a notice of appeal from the district court's grant of a downward departure on January 9, 2004.

## II.

Prior to the Supreme Court's pronouncements in *Booker*, the district court's explanation of the reasons for its grant of Jackson's request for a downward departure would almost certainly have been problematic under the Guidelines. The court relied on discouraged and prohibited factors and failed to discuss the extent of the departure at all. *Booker*, however, greatly changed the realm of federal sentencing. The question before us on appeal is what quality of analysis and explanation, if any, is necessary where the district court exercises its discretion to vary a defendant's sentence from the applicable range provided by the now-advisory Guidelines.[2]

After *Booker*, which rendered the Sentencing Guidelines advisory for all criminal cases, 125 S. Ct. at 764, district courts have enhanced discretion in the sentencing of criminal defendants. Ultimately, however, *Booker* requires that the sentence imposed by the district court be reasonable. *Id.* at 765. Both district courts imposing sentences in the first instance as well as appellate courts reviewing sentences on appeal are to be guided by the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 764-65. Thus, under this new sentencing scheme, district courts are required to consider the

---

[2] We note that the plea agreement in this case included a provision which stated that Jackson would be sentenced pursuant to the sentencing guidelines, and therefore one could argue that *Booker* does not apply. However, the government conceded at oral argument that we should review the sentence imposed under the dictates of *Booker*.

applicable Guidelines sentencing range when arriving at a defendant's sentence, 18 U.S.C. § 3553(a) (4), but only as one factor of several laid out in § 3553(a). *See Booker*, 125 S. Ct. at 764. ("Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals."). Once the district court has settled on a sentence that it deems to be reasonable, it then becomes our duty to review that sentence to ensure its reasonableness with an eye toward those same § 3553(a) factors. *Id.* at 765.

In this case, the district court decided to impose a sentence of three years of probation, including six months of home confinement, notwithstanding the fact that Jackson's criminal history category and base offense level placed him within a Guidelines range of twenty-seven to thirty-three months. In support of the imposition of this sentence, the district court provided a list of various characteristics of the defendant that it considered during sentencing. The district court's reasoning, however, did not include any reference to the applicable Guidelines provisions or further explication of the reasons for the particular sentence imposed.

We hold that, even post-*Booker*, the list provided by the district court, without any accompanying analysis, is insufficient to justify the sentence imposed, as it renders our reasonableness review impossible. Although we are fully cognizant of the fact that district courts are no longer bound by the Guidelines in the manner they once were, a fact which inevitably may empower district courts with greater flexibility in sentencing, we nonetheless find that, pursuant to *Booker*, we as an appellate court must still have the articulation of the reasons the district court reached the sentence ultimately imposed, as required by 18 U.S.C. § 3553(c). In our view, *Booker* requires an acknowledgment of the defendant's applicable Guidelines range as well as a discussion of the reasonableness of a variation from that range. Further, in determining the sentence, the district court must consider the advisory provisions of the Guidelines and the other factors identified in 18 U.S.C. § 3553(a).[3] *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) ("[R]eview for reasonableness is not limited to consideration of the length of the sentence. . . . [W]e may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.") (internal quotation marks, citation, and footnote omitted). Such an analysis is necessary in order to enable this court to engage in a meaningful reasonableness review of federal criminal sentences in accordance with *Booker*.[4]

## III.

For the foregoing reasons, we vacate the district court's sentence and remand Jackson's case for resentencing in accordance with *Booker*.

---

[3] To the extent that the district court in resentencing relies on any factors which are deemed by the Guidelines to be prohibited or discouraged, *see, e.g.,* U.S.S.G. §§ 5H1.1 (age), 5H1.4 (physical appearance or condition), 5H1.5 (employment record), 5H1.6 (family ties and responsibilities), 5H1.10 (race), the district court will need to address these provisions and decide what weight, if any, to afford them in light of *Booker*.

[4] In so holding, we wish to make clear that we are imposing no additional burden on district courts in reaching sentencing determinations. District courts have always been required to exercise their sentencing discretion in a manner which allows for meaningful appellate review. The fact that the Guidelines are now advisory does not alter the importance to an appellate court of an oral or written articulation on the record of the bases upon which a district court's sentencing determination rests.