**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0876n.06**
**Filed: December 5, 2006**

**No. 05-6542**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Kenneth Dale Sanders, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:     GIBBONS, MCKEAGUE, Circuit Judges; and BUNNING, District Judge.***

**McKeague, Circuit Judge.** Defendant-Appellant Kenneth Dale Sanders pleaded guilty to conspiring to manufacture methamphetamine and to possession of a firearm in relation to drug trafficking and was sentenced to a term of imprisonment of 262 months on the manufacturing conviction and a consecutive term of imprisonment of 60 months on the possession of a firearm in relation to drug trafficking conviction. Sanders appealed, arguing that the district court erred in (1) finding that "maximum term authorized" for career offenders meant life imprisonment in his case; (2) improperly weighing 28 U.S.C. § 994 in its analysis under 18 U.S.C. § 3553(a) in resentencing him; (3) unreasonably sentencing him in light of the factors set forth in 18 U.S.C. § 3553(a); and (4) resentencing him to the identical sentence he received pre-*Booker* because "*Apprendi*, *Blakely* and

---

* The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

*Booker* mandate that the court not accept any enhancements not determined by a jury in violation

of the Defendant's constitutional Sixth Amendment Right to a jury trial." For the reasons provided

below, we AFFIRM the orders of the district court.

## I.  BACKGROUND

On November 14, 2002, agents of the Tennessee Highway Patrol Criminal Investigation

Division arrived at the residence of Darren Rankin in Grundy County, Tennessee, having

received information of a "chop shop" at the location. *United States v. Sanders*, 125 F. App'x

685, 686 (6th Cir. 2005) (per curiam). The agents saw Kenneth Dale Sanders at the scene, and

they witnessed him attempting to conceal something in his pants as they approached him. *Id.*

Agents performed a pat down on Sanders, at which time they found he was wearing a shoulder

holster with a loaded Browning 9 mm semi-automatic firearm; a subsequent search revealed

approximately one ounce of methamphetamine. *Id.* Other items found at the scene, on which

Sanders' residence was located, included items normally used in the manufacture of

methamphetamine as well as a formula for the drug's manufacture. *Id.* Sanders was advised of

his rights, and he agreed to waive them and to make a statement. *Id.* In that statement, Sanders

told agents that he had been manufacturing methamphetamine for at least two years and that he

occasionally did so with other individuals, sometimes obtaining the chemicals he needed to

complete the manufacture by exchanging for those materials some of the methamphetamine he

manufactured. *Id.*

On December 10, 2002, a grand jury in the Eastern District of Tennessee returned a six-

count indictment against Sanders. *Id.* On February 6, 2003, Sanders pleaded guilty to Count 1,

conspiring to manufacture in excess of fifty grams of methamphetamine in violation of 21 U.S.C.

§§ 841(b)(1)(B) and 846, and Count 5, possession of a firearm in furtherance of a drug offense in

violation of 18 U.S.C. § 924(c). *Id.*

The probation officer prepared a presentence report ("PSR"). The PSR assigned Sanders

a base-offense level of twenty. The officer suggested a three-level enhancement under Section

2D1.1(b)(5)(B) of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines")[1]

because Sanders' production of methamphetamine with others present "created a substantial risk

of harm to these individuals due to the toxic vapors and risk of explosion." JA at 120. The

officer suggested a three-level reduction under U.S.S.G. § 3E1.1(a)-(b) for acceptance of

responsibility. Sanders has two prior felony drug convictions, in 1997 and 1998; accordingly, the

probation officer further suggested that Sanders' offense level be enhanced to thirty-seven under

the career offender provision of U.S.S.G. § 4B1.1. Following this enhancement, Sanders was

credited with a three-level downward departure under U.S.S.G. § 3E1.1(a)-(b) due to his

acceptance of responsibility, and the resulting adjusted offense level recommended by the officer

equaled thirty-four.

Sanders' prior convictions qualified him for a total of five criminal history points, with

two additional points added under U.S.S.G. § 4A1.1(d) because he was on parole at the time of

the instant offense and one additional point added under U.S.S.G. § 4A1.1(e) because the instant

offense was committed less than two years after his release from custody for his 1998 conviction.

---

[1] The district court used the 2002 version of the Guidelines manual.

Accordingly, he had eight total criminal history points, which would have resulted in a criminal history category of IV, but for his classification as a career offender, which mandates a criminal history category of VI. The resulting Guidelines sentencing range for Count 1 equaled 262 to 327 months. The statutory minimum consecutive sentence on the Count 5 conviction under 18 U.S.C. § 924(c) is 60 months. Accordingly, the effective Guideline range was 322 to 387 months. The statutory minimum sentence on the Count 1 conviction under 21 U.S.C. § 841(b)(1)(B) is ten years. The maximum term for both Counts 1 and 5 is life imprisonment.

The PSR was given to the parties on April 17, 2003. At the first sentencing hearing, Sanders filed one objection and two motions for downward departure. He objected to the three-level enhancement for substantial risk of harm, but the district court declined to resolve the objection because it did not affect the Guideline range due to Sanders' career offender status. In Sanders' motions for downward departure, he argued that his career offender status overstated the seriousness of his prior convictions and that he had an extraordinary medical condition, namely skin cancer. The district court denied both motions.

The district court sentenced Sanders to 262 months for Count 1 and a consecutive sentence of 60 months for Count 5. *Sanders*, 125 F. App'x at 685. Sanders moved to withdraw his guilty plea, the district court denied the motion, and Sanders appealed. *Id.* at 687. This court affirmed Sanders' convictions for Counts 1 and 5, and remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *Id.*

On remand, Sanders argued that the sentencing factors of 18 U.S.C. § 3553(a) warranted a sentence below the applicable Guideline range. Specifically, he argued that the combined

mandatory minimum sentence for both counts of fifteen years was sufficient to achieve the

sentencing goals, namely to provide just punishment, afford adequate deterrence, promote respect

for the law, and protect the public from future crimes; accordingly, his counsel argued, "[a] 27-

year sentence is not going not going to do anything more to Kenneth Sanders to address these

concerns than a 15-year sentence." JA at 104-05. The district court noted, however, that Sanders

failed to address 28 U.S.C. § 994(h), which directs the Sentencing Commission to assure that the

Guidelines specify "a sentence to a term of imprisonment at or near the maximum term

authorized" for repeat offenders like Sanders. Such a term would be life in Sanders' case. JA at

106-07. The United States argued that Sanders' prior convictions warranted a term of

imprisonment within the Guideline range applicable to career offenders. The district court

reimposed the earlier sentence of 322 months, a sentence at the low end of the Guideline range.

Judge Collier explained his reasoning as follows:

> I don't want you to believe that judges are people without hearts. I feel for you as
> a human being. But when we become judges, we take an oath to enforce the law.
> And in this case the law is clear that the Congress of the United States, the body
> that has the authority to make the laws–and we all have an obligation to obey
> them, including judges–indicates that people who commit crimes such as you
> have committed, with your background, should receive a sentence at or near the
> maximum possible. In this case the maximum possible sentence is a term of life
> imprisonment. The Court believes that in passing this statute the Congress has
> stated that it believes that such sentences provide just punishment, such sentences
> act as an adequate deterrence, and such sentences promote respect for the law.
>
> Now, I don't believe that judges in an ordinary case are permitted to
> question the wisdom of Congress. Taking into account the factors stated in
> Section 3553(a), along with that statement in 28 U.S.C. Section 994, the Court
> believes that the earlier sentence the Court imposed is appropriate in this case.
> The Court believes that sentence adequately complies with the directions from
> Congress, even though it is not the maximum in this case. And some might even

argue it's not near the maximum punishment. Therefore the Court will reimpose the earlier sentence for the reasons stated today as well as the reasons stated at the initial sentencing hearing, with the exception that any comments the Court made about the guidelines being mandatory obviously would not stand at this point.

JA at 111-12. Sanders filed a timely appeal.

## II.  ANALYSIS

### A.  The 28 U.S.C. § 994(h) "maximum term authorized" for Sanders

Section 994(h) of Title 28 of the United States Code provides that

The [United States Sentencing] Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and
    (1) has been convicted of a felony that is--
        (A) a crime of violence; or
        (B) an offense described in section 401 of the Controlled Substances
            Act (21 U.S.C. § 841) . . . ; and
    (2) has previously been convicted of two or more prior [such] felonies . . . .

28 U.S.C. § 994(h). To the extent that Sanders admits that he has prior convictions of two drug-related felonies when he was 38 and 39 years of age and these convictions were in violation of the Controlled Substances Act ("CSA"), the elements of 28 U.S.C. § 994(h)(2) are not in dispute. Additionally, his conviction in the instant case, as stated above, was also a violation of the CSA, satisfying § 994(h)(1).

Sanders claims, rather, that the district court erred by finding that the phrase "maximum term authorized" for career offenders pursuant to § 994 means life imprisonment.[2] He argues

---

[2] Whether the district court improperly weighed § 994(h) in sentencing Sanders is another issue that Sanders raises on appeal, and it is addressed later. Here, he argues that the district court improperly interpreted § 994(h).

that "maximum term authorized" should be interpreted as the maximum pursuant to the Guidelines, which would be 387 months, as the Guideline range was 322 to 387 months, rather than the statutory maximum, which is life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 924(c). Sanders offers little support for his argument. He references *Apprendi v. New Jersey*, 530 U.S. 46 (2000), and *United States v. LaBonte*, 520 U.S. 751 (1997), but seems to admit that they do not support his argument; rather, he concludes "even if a prior conviction enhances a Defendant's sentence, the Defendant submits that the Court should look at the guideline range as the Defendant's 'statutory maximum' rather than at 'life' per the statute." (Appellant's Br. 17). He essentially argues the Guidelines "warrant the same consideration for career offenders as any other class of offenders," claiming that career offenders may be "mistreat[ed]" otherwise. *Id.*

Sanders asserts that because this issue is an issue of law, the standard of review is de novo; he is, of course, correct in asserting that issues of law are reviewed by this court under a de novo standard. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). However, the United States points out that because Sanders failed to raise this issue at the district court level, the standard of review is plain error. The United States is correct in its assertion that this court applies a plain error standard of review when a defendant fails to raise a claim during sentencing proceedings. *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004); *United States v. Koeberlin*, 161 F.3d 946, 949 (6th Cir. 1998). The lower court did not analyze this issue, as it was not raised at either sentencing hearing.

Irrespective of the standard of review employed, Sanders' argument fails. Indeed, the Supreme Court has already rejected the argument that Sanders attempts to employ. In *LaBonte*, the Court confronted the question of the meaning of the phrase "maximum term authorized" in § 994(h). The Court reasoned that "term authorized" refers to the period of incarceration permitted by the applicable sentencing statutes, not to the period specified by the Guidelines. *LaBonte*, 520 U.S. at 758. Accordingly, the phrase "maximum term authorized" requires the greatest sentence that is statutorily allowed. *Id.* The Court thus held that "the phrase 'at or near the maximum term authorized' is unambiguous and requires a court to sentence a career offender 'at or near' the 'maximum' prison term available once all relevant statutory sentencing enhancements are taken into account." *Id.* at 762.

*LaBonte* speaks directly to the issue Sanders raises, and the Court's recent criminal procedure cases, *Apprendi*, *Blakely*, and *Booker* do not alter the holding in *LaBonte*. Indeed, the Court held in *Apprendi* that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Blakely* clarified *Apprendi*, holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original) (citations omitted).

Applying that precedent to the facts of the instant case, neither *Apprendi* nor *Blakely* helps Sanders by signaling a departure from the holding in *LaBonte*. Indeed, the facts that

increased the penalty for Sanders were his prior convictions, which the *Apprendi* Court

specifically excepted from its rule. Furthermore, Sanders admitted those prior convictions and

his age at the time of those offenses on the record at his sentencing hearing, a fact that also

defeats his argument in light of the holding in *Blakely*.

Booker does even less to help Sanders regarding his appeal on this issue. Indeed, *Booker*

declared invalid the statute making the application of the Guidelines mandatory. *United States v.*

*Booker*, 543 U.S. 220, 245 (2005). Accordingly, the district court is free to choose a sentence

above the Guideline range, which is now advisory. Hence, the top of the Guideline range cannot

be the maximum sentence authorized for purposes of § 994(h), as Sanders implores this court to

declare.

Because *Apprendi*, *Blakely*, and *Booker* offer no reason to depart from the holding of

*LaBonte*, the latter case dictates that this court reject Sanders' argument. Indeed, this conclusion

is not only supported from the standpoint of a logical analysis of Supreme Court jurisprudence,

but it is also supported by this court's application of that jurisprudence. *United States v. Coffee*,

434 F.3d 887, 898 (6th Cir. 2006) ("*Booker* did not eliminate judicial factfinding. Instead, the

remedial majority gave district courts the option, after calculating the Guideline range, to

sentence a defendant outside the resulting Guideline range."); *United States v. Phillips*, 143 F.

App'x 667, 671-72 (6th Cir. 2005) ("Because the district court's decision to depart upward was

based on Mr. Phillips' prior convictions, it did not violate [the constitutional rule of *Apprendi*,

*Blakely*, and *Booker*].").  Accordingly, there is no basis for Sanders' first argument on appeal.

Moreover, it is unclear how Sanders' argument could help him, practically speaking, even if he is correct that "maximum term authorized" should be interpreted as the maximum pursuant to the Guidelines, which would be 387 months in his case, rather than the statutory maximum, which is life imprisonment in his case.  Sanders was sentenced by the district court to a term of 322 months.  This sentence was at the low end of the applicable Guideline range, not "at or near" the statutory maximum or the top of the Guideline range.  Thus, it is unclear how Sanders' argument helps him even if this court were to accept it.

**B.  The reasonableness of Sanders' sentence**

Sanders next claims that "career offenders should receive the same treatment as other class offenders" and that he was not afforded the same treatment because the trial court "improperly weighed 28 U.S.C. § 994," and "interpreted . . . § 994 as Congress' intent to sentence career offenders, generally, to the maximum term they would be facing."  (Appellant's Br. 18).  Continuing this argument, he asserts that under the trial court's reasoning, a career offender will "automatically" be sentenced at or near the maximum term of imprisonment without considering the other § 3553(a) factors.  *Id.*

Sanders also generally argues that his sentence was unreasonable in light of the § 3553(a) factors.  He claims that the district court "placed a tremendous amount of emphasis" on subsections (a)(4) and (a)(2)(A).  (Appellant's Br. 21).  He additionally rehashes his argument that the district court "placed a tremendous amount of emphasis on [§ 994(h)]."  (Appellant's Br.

22). He concludes by arguing that his "relatively minor criminal history" does not justify career offender status and that a fifteen year sentence would accomplish the goals of § 3553(a). (Appellant's Br. 22-25).

In *Booker*, the Supreme Court declared invalid the statute making the Sentencing Guidelines mandatory. 543 U.S. at 245. However, it left the Guidelines scheme intact for use by the district courts as a guide for sentencing. *Id.* at 266-67. Accordingly, section 3553(a) requires district courts to consider the following factors in fashioning a defendant's sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Post-*Booker*, a district court must impose "'a sentence sufficient, but not greater than necessary to comply with the purposes' of § 3553(a)(2)." *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

Sanders here challenges the district court's sentencing decision, both in general and by raising the aforesaid assignments of error. Such decisions are reviewed for reasonableness. *Booker*, 543 U.S. at 261-62; *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005). Sixth Circuit precedent has indicated what constitutes a review for reasonableness, specifically noting that a sentence is unreasonable when the court fails to consider the applicable guidelines range and the factors in 18 U.S.C. § 3553(a). *United States v. Williams*, 432 F.3d 621, 622-23 (6th Cir. 2005) ("*Booker* requires an acknowledgment of the defendant's applicable Guidelines range as well as a discussion of the reasonableness of a variation from that range. . . . A mere list of characteristics of the defendant considered at sentencing by the district court . . . is insufficient.") (citing *United States v. Jackson*, 408 F.3d 302, 304 (6th Cir. 2005)); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The district court must articulate the reasons for the particular sentence imposed in order to enable this court to engage in a meaningful reasonableness review of the sentence. *Jackson*, 408 F.3d at 305. Further, this circuit has held that a reasonableness

review contains both substantive and procedural components. *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006) (citations omitted).  Accordingly, this court must take into account the length of the sentence as well as "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006), *cert. denied*, 75 U.S.L.W. 3172 (U.S. Oct. 2, 2006) (No. 06-5395) (quoting *Webb*, 403 F.3d at 383).

Important for purposes of appeal, this court has held that sentences that are properly calculated under the Guidelines are credited with a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).  However, the sentencing court still must explain its reasons for imposing a particular sentence "sufficiently to permit reasonable appellate review." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

We first address Sanders' particularized assignments of error and then address his general claim that the sentence imposed by the district court was unreasonable.  With regards to the former, he complains (1) that "career offenders should receive the same treatment as other class offenders," (2) that the district court improperly weighed 28 U.S.C. § 994(h), and (3) that under the trial court's reasoning, a career offender will "automatically" be sentenced at or near the maximum term of imprisonment without considering the other § 3553(a) factors. (Appellant's Br. 18).

First, as stated previously, the Supreme Court has held that career offenders are not to be treated the same as non-career offenders, per § 994(h).  Indeed, in *LaBonte*, the Court held that § 994(h) unambiguously "requires a court to sentence a career offender 'at or near' the 'maximum'

prison term available once all relevant statutory sentencing enhancements are taken into account," and that although Congress has delegated broad discretion to the Sentencing Commission in formulating the Guidelines, that discretion "must bow to the specific directives of Congress." *LaBonte*, 520 U.S. at 757, 762. Hence, this court must deny Sanders' first claim because Congress specifically directed the Sentencing Commission to not treat career offenders like Sanders in the same manner as other offenders.

Second, there is no reversible error in the district court's consideration of § 994(h). While it is true that section is a directive to the Sentencing Commission rather than district courts, the Supreme Court has held that the phrase "maximum term authorized" in § 994(h) requires a court to sentence career offenders to the maximum prison term available "once all relevant statutory sentencing enhancements are taken into account." *LaBonte*, 520 U.S. at 762. Consistent with that holding, section 3553(a)(3), which this court must consider in sentencing a criminal defendant, *Williams*, 432 F.3d at 622-23, requires a court to consider "the kinds of sentences available." 18 U.S.C. § 3553(a). Furthermore, even if Sanders were correct, it is unclear to this court how he has been harmed by the district court's consideration of § 994(h). As stated above, § 994(h) dictated a life sentence, yet the district court still sentenced Sanders to the very bottom of the Guideline range.

Third, there is no merit to Sanders' claim that if a trial court considers § 994(h) in its § 3553(a) analysis, career offenders will automatically be sentenced at or near the maximum term of imprisonment without regard for the § 3553(a) factors. Indeed, his case is an example of just the opposite: § 994(h) indicated a term of life imprisonment was appropriate, yet the district

court judge sentenced him to 322 months, which was the low end of the Guideline range. Accordingly, Sanders' attack in this instance must fail.

Nor is there any merit to Sanders' general claim that his sentence is unreasonable. Indeed, his arguments fail to show the unreasonableness of his sentence under this court's precedent. Sanders does not argue that the district court improperly calculated his sentence under the Guidelines; accordingly, he must rebut the presumption that his sentence is reasonable. *Williams*, 436 F.3d at 708. Sanders does not claim that the district court failed to consider the applicable Guideline range because he was, in fact, sentenced to the bottom of the applicable range. Nor does he argue that the district court failed to consider the factors in § 3553(a); to the contrary, he admits that the court considered those factors in its analysis.

Nor did the district court merely recite a list of characteristics of the defendant. Rather, the district court "articulate[d] the reasons for the particular sentence imposed": notably, it (1) acknowledged that the Guidelines are merely advisory; (2) took into account the Guideline range of 322 to 387 months; and (3) noted that Sanders' "criminal involvement with controlled substances has escalated despite his convictions" and that Sanders' two prior drug convictions were within seven years, leading to its conclusion that Sanders' criminal history category did not significantly overrepresent the seriousness of his criminal history or the likelihood that he would commit further crimes. JA at 87-89, 101-02, 106-08. Thus, the district court followed this court's direction that it must explain its reasons for imposing a certain sentence sufficiently to permit reasonable appellate review. *Richardson*, 437 F.3d at 554.

Sanders attempts to bolster his argument that his sentence was unreasonable by citing to

*United States v. Washington*, an unpublished decision by this court. Nos. 00-3389, 00-3392,

2001 WL 1301744, at *1 (6th Cir. Aug. 8, 2001) (unpublished). In *Washington*, this court

affirmed the district court's decision that the criminal history category of Washington, the

defendant, significantly overrepresented the seriousness of his criminal history, and hence that he

should not be sentenced pursuant to the career offender provision. *Id.* at *5-*6. Washington had

been convicted of trafficking cocaine in 1992, possession of cocaine in 1993, and trafficking

cocaine in 1995; in the case at the bar, he pleaded guilty to possession with intent to distribute

cocaine and cocaine base. *Id.* at *1, *5. This court, confined by the then-mandatory Guidelines,

held that the district court had not abused its discretion in departing downward from the

applicable sentencing guideline. *Id.* at *4.

*Washington* is easily distinguished from the instant case. In that case, the district court

had already departed downward from the applicable guideline; thus, this court reviewed the

district court's decision under an abuse of discretion standard. *Id.* at *4. An abuse of discretion

exists only when the reviewing court is firmly convinced that a mistake has been made. *Ross v.

Duggan*, 402 F.3d 575, 575 (6th Cir. 2004). To find an abuse of discretion, a court must have a

definite and firm conviction that the district court committed a clear error in judgment. *Bell v.

Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005). Accordingly, *Washington* does not stand for the

proposition that a criminal defendant's career offender status overrepresents his criminal history

anytime his prior drug offenses involves small amounts of drugs, as Sanders would have this

court believe. Rather, the deferential standard of review employed drove this court's decision.

*Washington*, 2001 WL 1301744 at \*5 ("[T]his court concludes that the district court *did not abuse its discretion* by *electing* not to sentence Defendant as a 'career offender' . . . .") (emphasis added). Indeed, this court mandated that the holding in *Washington* is "[c]onfined to the unique circumstances of this case," thus expressly warning against the generalization that Sanders implores the court to employ in the instant case. *Id.*

*United States v. Smith* is a case from this court that is more on point and that demonstrates Sanders' interpretation of *Washington* is misplaced. 105 F. App'x 711 (6th Cir. 2004). First, this court in *Smith* dictated that Sanders' argument will not prevail even if this court finds that his criminal history category significantly overrepresents his prior crimes. *Id.* at 714 ("*Washington* does not require a district court always to depart downward . . . *even where* the court finds that a criminal history category significantly overrepresents a defendant's prior crimes.") (emphasis added).

Second, *Smith* is directly on point with the instant case. In *Smith*, the PSR recommended career offender status for Smith, and he filed a motion for a downward departure, arguing that his prior criminal convictions involved relatively small quantities of drugs and that his criminal history category overstated his prior criminal conduct; hence, analogizing to *Washington*. *Id.* at 712. The district court denied the motion, and this court affirmed, holding that "[b]ased on Smith's likely recidivism, the district court properly exercised its discretion to deny the motion for a downward departure." *Id.* at 714. The facts in *Smith* parallel the instant case: career offender status was recommended for Sanders, he claimed that his "relatively minor criminal history" does not justify career offender status because of the minor penalties given, he

analogized to *Washington*, and the district court's decision was based on Sanders' recidivism, as the court noted that Sanders "has a consistent criminal history" and that his "criminal involvement with controlled substances has escalated despite his convictions." JA at 87. Accordingly, *Smith* applies and *Washington* fails to support Sanders' claim that his sentence is unreasonable.

In short, Sanders makes no argument that furthers his position in accordance with this court's reasonableness sentencing jurisprudence, either in terms of cases that are factually similar or in terms of legal standards that he must satisfy. Furthermore, Sanders has little about which to complain regarding the reasonableness of his sentence; indeed, it is worth repeating that his sentence was 322 months, which was at the low end of the Guideline range, even though § 994(h) dictated a life sentence.

## C. Sanders' remaining arguments

Finally, Sanders makes two arguments that warrant little discussion. First, he asks this court to "adopt a new rule of law which extends *Apprendi* . . . and *Blakely* . . . to the facts of a prior conviction." This argument is a direct affront to *Apprendi*, a decision by the Supreme Court that this court has no authority to overturn. Indeed the Supreme Court in *Apprendi* held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). The Court recently and explicitly reaffirmed this rule. *Booker*, 543 U.S. at 244. Therefore, to the extent that Sanders asks this court to "extend" *Apprendi* in a manner that expressly contravenes an exception that the

Supreme Court has consistently carved out, his argument is meritless. Sanders cites no authority in support of such an audacious proposition.

Alternatively, Sanders asks this court to adopt a new rule that would require trial courts "to advise defendants if they are in fact career offenders prior to allowing defendants to change their plea to guilty." (Appellant's Br. 28). Sanders essentially claims that trial courts should be made to advise defendants as to what their prior convictions are and what effect those convictions will have on their sentences. This proposition fails for several reasons. First, Sanders provides no support from any other jurisdiction that has adopted a similar rule. Second, as a matter of course, the defendant himself should know what his prior convictions are. Sanders gives no reason why trial courts must bear the burden of informing a criminal defendant of his criminal history, information that one would believe is important enough for a defendant to keep himself apprised of, either through memory or written records. Similarly, Sanders provides no reason why trial courts, rather than a defendant's attorney, should bear the burden of advising the defendant what effect his prior convictions will have on his sentence. While it is true that a lay person may be unable to understand the nuances of the Sentencing Guidelines, there is no reason that a licensed attorney should not be able to provide such advice upon learning the defendant's criminal history. This is simply a burden that this court will not impose on trial courts.

### III. CONCLUSION

For the foregoing reasons, the panel AFFIRMS the orders of the district court.