**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0103n.06
Filed: February 9, 2009

**No. 07-6103**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **CHRISTOPHER BUFFINGTON**, a.k.a. | ) | **O P I N I O N** |
| Chrisopher Johnson, a.k.a. Terrance Watson, a.k.a. | ) | |
| Dawson James Watson, a.k.a. Christopher Charles | ) | |
| Bolden, a.k.a. Christopher C Johnson, a.k.a. Jimmy | | |
| Watson, | | |
| | | |
| *Defendant-Appellant.* | | |

**BEFORE:** MERRITT, COLE, and SUTTON, Circuit Judges.

**COLE, Circuit Judge.** Defendant-Appellant Christopher Buffington appeals his August 31,

2008 conviction and sentence for violating 18 U.S.C. § 922(g). Buffington claims that the district

court violated his rights under the Confrontation Clause of the Sixth Amendment by admitting

testimony by a police officer that Buffington's wife told the officer that Buffington owned the

wrappings in which the seized guns were packaged. Buffington also argues that his sentence is

procedurally and substantively unreasonable under *United States v. Booker*, 543 U.S. 220 (2005).

For the following reasons, we **AFFIRM** Buffington's conviction, but **REMAND** for resentencing

because the district court failed to explain sufficiently its reasons for rejecting Buffington's

arguments in support of a lower sentence.

## I. BACKGROUND

In November 2006, two firearms, among other items, were stolen from a McKenzie, Tennessee residence. On November 30, 2006, Randall Conquest, a confidential informant ("CI") for the McKenzie Police Department, advised Officer Timothy White that he possessed information regarding the stolen firearms. Officer White then arranged for Officer Timothy Cunningham, of the Savannah, Tennessee Police Department's Drug and Violent Crime Task Force, to meet with Buffington to make an undercover purchase of the firearms.

Using Conquest's information, Officer Cunningham, going by the name of "Trey," contacted a person known as "Chris" by telephone and asked to purchase an SKS rifle. They arranged to meet later that night at a local service station, and, at trial, Officer Cunningham positively identified Buffington as "Chris." Although Officer Cunningham wore a "wire" during his meeting with Buffington, the equipment had technical problems, preventing the Police Department from obtaining a useable recording. Officer Cunningham claims that Buffington offered to sell him both an SKS rifle and a 30-06 rifle for a total of $500, told him that he had recently been released from a Florida prison, and informed him that he also owned a .45 caliber pistol, which was not for sale. When Officer Cunningham refused to accompany Buffington to his uncle's house to retrieve the weapons, the deal fell through.

Because Officer Cunningham's undercover purchase was unsuccessful, Officer White asked Conquest to attempt to purchase the firearms from Buffington. Conquest testified at trial that on December 2, 2006, he and his girlfriend, Tiffany Steele, met Officer White in a church parking lot

2

before meeting Buffington. Officer White equipped Conquest with a wire and provided him with cash for the firearms purchase.

Conquest proceeded to Buffington's residence and, as arranged, gave him $300 in cash in exchange for the SKS rifle. Buffington left the house to retrieve the rifle, and he returned with a large duffel bag. At that time, Buffington also offered to sell Conquest a 30-06 caliber rifle for an additional $200. Conquest left and quickly returned with an extra $200 (given to him by Officer White), which he used to purchase the other rifle. Buffington then gave Conquest the duffel bag, which contained both of the guns wrapped in blankets and a sleeping bag.

On December 5, 2006, the McKenzie Police Department executed a search warrant at Buffington's residence but located neither guns nor any other items relating to the November burglary. Buffington was then arrested and interviewed regarding the stolen firearms. He denied meeting with Officer Cunningham, and although he admitted to meeting with Conquest, Buffington claimed that he had been unaware of the contents of the duffel bag that he had exchanged for Conquests's $500. On January 23, 2007, a grand jury indicted Buffington for possessing a firearm in violation of 18 U.S.C. § 922(g). Following a one-day trial, a jury found Buffington guilty.

In its Pre-Sentence Investigation Report ("PSR"), the Government set forth Buffington's extensive criminal history, which included previous convictions for six felony offenses, as well as numerous juvenile crimes and misdemeanors, making Buffington subject to an "Armed Career Criminal" enhancement under the United States Sentencing Guidelines ("Guidelines"). The PSR proposed a Total Offense Level of 34 and a Criminal History Category of VI, corresponding to a recommended range of 262 to 327 months' imprisonment followed by three to five years of

supervised release. The court calculated the applicable Guidelines range as 235 to 293 months. At his sentencing, Buffington asked the court to consider a below-Guidelines sentence of 180 months, but the court sentenced Buffington to 235 months, followed by five years of supervised release. Buffington timely filed this appeal.

## II. ANALYSIS

### A.    Confrontation Clause

Buffington's first claim on appeal is that the district court's admission of testimony by McKenzie police officer, Timothy Nanney, at trial violated his rights under the Confrontation Clause. At trial, Officer Nanney testified regarding the police surveillance of Officer Cunningham's attempted undercover purchase of firearms. He testified that he had heard the conversation between Officer Cunningham and Buffington over the wire, and he corroborated Officer Cunningham's testimony regarding his attempt to purchase the rifles. Officer Nanney also testified that the recording device used for surveillance had malfunctioned and had recorded only one half of their conversation.

Officer Nanney testified that following Conquest's purchase of the two guns, the McKenzie Police Department recovered the firearms and processed them for fingerprints but did not find Buffington's fingerprints. During cross-examination, Officer Nanney testified that though the officers had found unidentified fingerprints on the weapons, they did not test for trace evidence on the blankets and sleeping bag wrapped around the weapons or the duffel bag that contained them.

The Government then put forth evidence in an effort to connect Buffington to the rifles. During a sidebar, defense counsel acknowledged that prior to his cross-examination of Officer

Nanney, the Government had notified him that Buffington's wife had told Officer Nanney that the blanket and sleeping bag in which the weapons were wrapped, belonged to her husband. Defense counsel asserted that because Mrs. Buffington was unavailable for questioning, allowing Officer Nanney to testify as to her statement would violate Buffington's rights under the Confrontation Clause. Although defense counsel asked the judge to limit the Government's line of questioning regarding the sleeping bag, blankets, and duffel bag to questions about the types of tests conducted on them, the judge denied his request.

During the Government's re-direct examination, Officer Nanney implied that he had not tested the blankets and the bag for trace evidence because Mrs. Buffington had told him that they belonged to Buffington:

> **Government:** Now, these blankets, sleeping bags and everything else that we have right here that defense counsel showed you and asked you why you didn't do all the investigative things that you see on CSI to get fiber and hair and all this other business off of it, did you know where that—where those things came from?
>
> **Nanney:** I do.
>
> **Government:** And how do you know? And just say—Let me put it this way. Were you told by someone?
>
> **Nanney:** Yes, I was.
>
> **Government:** And who was that someone?
>
> **Nanney:** The defendant's wife.

(Joint Appendix ("JA") 55-56.)

We review the district court's evidentiary rulings under an abuse-of-discretion standard.

*United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (citation and quotation marks omitted). We will reverse the district court's decision "only if we are firmly convinced that a mistake has been made." *Id.*

Testimonial statements of a declarant absent from trial may be admitted only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. *See Crawford v. Washington*, 541 U.S. 36, 58 (2004). To trigger a violation of the Confrontation Clause, an admitted statement must be testimonial in nature, and must be hearsay, i.e., a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) (citing Fed. R. Evid. 801(c)).

The district court's admission of Officer Nanney's testimony violated Buffington's rights under the Confrontation Clause. Mrs. Buffington's statement was testimonial because she provided Officer Nanney with the information about the blankets and sleeping bag in the context of a police interrogation. *Crawford*, 541 U.S. at 68; *Pugh*, 405 F.3d 399 (statement of identification was testimonial where declarant could reasonably assume that the statement would be used against the suspects in either an investigation or a prosecution). Also, because the statement at issue pertains to the question of whether Buffington possessed the firearms, it goes to the heart of the Government's case. *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990) (". . . [E]ven if an out of court statement is purportedly offered to explain an investigation, it nevertheless may be inadmissible hearsay where it goes 'to the very heart of the prosecution's case.'"); *Cromer*, 389 F.3d

6

at 677 (CI's statement that defendant's hangout was a "residence associated with selling drugs" was not merely background evidence because it went to the very heart of the prosecutor's case against defendant); *cf. Gibbs*, 506 F.3d at 486-87 ("[Whether defendant] had long guns, shotguns, or rifles in his bedroom was not offered for its truth because the testimony did not bear on [his] alleged possession of the .380 Llama pistol with which he was charged."). Thus, while Officer Nanney's statements connecting Buffington to the blankets and sleeping bags provide some background as to the reason the officers chose not to test those items for trace evidence, they also establish the truth of the matter asserted: that Buffington possessed the weapons at issue. *See Cromer*, 389 F.3d at 677.

Regardless, given the overwhelming evidence of Buffington's attempts to sell the stolen firearms at issue, the district court's admission of Officer Nanney's testimony amounts to harmless error. *See Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2004) ("Confrontation Clause violations are subject to harmless error review."); *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004) (harmless error means that it is more probable than not that the error did not materially affect the verdict). At trial, both Officer Cunningham and Conquest testified about their attempts to purchase firearms from Buffington, and their testimony was confirmed by Officers Nanney and White, as well as by Steele. Thus, Officer Nanney's testimony was merely cumulative of the other evidence connecting Buffington to the sale of the stolen weapons. Due to the strength of the other evidence and the fact that the defense offered no alternative theory for Buffington's possession of the duffel bag, the testimony that Mrs. Buffington had identified items containing the guns as her husband's likely was not the driving force behind the jury's verdict. *See Gibbs*, 506 F.3d at 485 (in the face of substantial evidence of defendant's actual or constructive possession of the guns at issue, disputed

7

testimony regarding the officers' search of defendant's bedroom did not materially affect the verdict).

**B.** **Reasonableness of Buffington's Sentence**

Buffington asserts that the court should have granted his request for a 180-month sentence because he had experienced a difficult upbringing, his prior convictions occurred primarily during his youth, the conviction at issue resulted from a law enforcement "set up," and his wife was pregnant with twins at the time of sentencing. He argues that his 235-month sentence was procedurally unreasonable because the district court failed to specify reasons for rejecting Buffington's arguments in support of a below-Guidelines sentence. We agree.

At sentencing, the court explained Buffington's sentence as follows:

> Mr. Buffington, in deciding what your sentence should be I have to consider several factors. One of the factors I have to consider is the guideline range; and, as I've indicated, we've calculated your guideline range to be 235 to 293 months.
>
> But that's not the only factor that I have to consider. I also have to consider the nature and circumstances of this offense. And it's true that the firearms were not used in any sort of violent crime. You weren't using these guns to rob a bank or to shoot anybody. That factor makes this a typical felon in possession case where you're a felon and you possessed the firearms without any further aggravating factors. So that factor cuts in your favor.
>
> I also have to look at the history and characteristics of the defendant. That factor is not in your favor, Mr. Buffington, because you have a terrible record. In fact, you started committing offenses when you were 13 years old, and you had five offenses—six, seven offenses while you were a juvenile. So even if we throw out all the juvenile offenses and just look at your adult convictions, there are numerous adult convictions starting in 1988 when you were 18 years old, many of which resulted in no criminal history points.
>
> Your criminal history is much worse than it appears, but you're already at a level VI, which is as high as it gets. I guess we would call you a super VI because

8

you have way more convictions than your criminal history score reflects. So that factor is not in your favor.

I have to consider other factors such as the need to avoid disparity of sentences. What that means is, Mr. Buffington, I want to make sure that you get a sentence that is similar to that received by other people in similar situations who have committed similar crimes. The guidelines will do that in your case.

I have to consider the deterrent effect of this sentence. What message do I send to other people in the neighborhood who are felons and who have firearms? And I want that message to be that it's a serious crime, particularly if you have a record as bad as yours. To possess a firearm is a very serious crime, and that's why a long sentence of incarceration is justified.

I have to consider the availability of alternative sentences. Can I appropriately punish you with a fine, probation, house arrest, community service, or is incarceration required? Given your long criminal history and the serious nature of some of those offenses, the court finds that incarceration is the only realistic answer.

Considering all those factors, it's my judgment that a sentence within your guideline range is appropriate but a sentence at the low end of your guideline range is sufficient to punish you. That is a long sentence even at the low end of the guideline range.

So, Mr. Buffington, I'm going to commit you to the custody of the Bureau of Prisons for a term of 235 months.

(JA 105-07.)

Following *Booker*, this Court reviews a sentence for reasonableness. *United States v. Keller*, 498 F.3d 316, 323 (6th Cir. 2007). Reasonableness review has both procedural and substantive components. *Id*. Although procedural reasonableness does not require the district court to cite each § 3553(a) factor in arriving at a sentence, *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006), it does require that the district court "consider the advisory Guidelines range and all relevant factors identified in 18 U.S.C. § 3553(a)." *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir.

2006); *United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005); *Webb*, 403 F.3d at 383. The presumption of reasonableness afforded to sentences within the advisory Guidelines range, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), does not relieve the district court of its duty "to explain to the parties and the reviewing court its reasons for imposing a particular sentence." *Richardson*, 437 F.3d at 554. We have held that meaningful reasonableness review requires that "[w]here a defendant raises a particular requests in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Id*. at 554; *accord Foreman*, 436 F.3d at 644 (explaining that a sentence within the Guidelines range carries no presumption of reasonableness where the record does not reflect that the court considered "all of the relevant section 3553(a) factors"); *Jackson*, 408 F.3d at 305 (stating that procedural reasonableness requires "reference to the applicable Guidelines provisions"). "This assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable." *Richardson*, 437 F.3d at 554; *see also Jackson*, 408 F.3d at 305 (merely providing a list of a defendant's characteristics, "without any accompanying analysis, is insufficient" under *Booker*).

Although the district court appears to have evaluated most of the § 3553 factors during the colloquy and commented on Buffington's criminal history, the judge never specifically addressed three of Buffington's four arguments in favor of a 180-month sentence. The judge's failure to respond to these three arguments provides neither Buffington nor this Court with any insight into why he found them unpersuasive. *See Williams*, 432 F.3d at 622 ("In order for an appellate court

to effectively review the reasonableness of the sentence, there must be an adequate explanation of the district court's reasons for imposing the sentence."); *see also Richardson*, 437 F.3d at 554 (requiring a court to provide specific reasons for rejecting a defendant's requested sentence); *see also*, *Jackson*, 408 F.3d at 305 (same). "[W]e require some demonstration that the court analyzed the § 3553(a) factors in relation to this particular defendant and some evidence of a descriptive link between the defendant and the sentence imposed." *United States v. Mitchell*, 232 F. App'x 513, 521 (6th Cir. 2007) (finding that district court failed to explain adequately its rejection of defendant's arguments for a below-Guidelines sentence). Because the district court failed to provide a sufficient basis for its rejection of Buffington's arguments for a lower sentence, we conclude that the sentence is procedurally unreasonable. *See Richardson*, 437 F.3d at 554. On remand, the district court, in addition to its review of the factors set forth in section 3553(a), should describe sufficiently the extent to which it has considered the asserted bases for a lower sentence and how those bases relate to the sentence imposed.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Buffington's conviction, but **VACATE** Buffington's sentence and **REMAND** for resentencing consistent with this opinion.