NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0445n.06

No. 09-6297

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 02, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENNETH LAMONT FERGUSON, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

**Before:  BOGGS and STRANCH, Circuit Judges; CARR, District Judge.**[*]

**JAMES G. CARR, District Judge**. Defendant Kenneth Ferguson appeals his 200-month sentence on procedural and substantive grounds.  The defendant also claims his attorney was constitutionally ineffective for failing to include in his argument for a downward variance a discussion of the unfairness of the 100:1 crack/powder cocaine ratio.

For the following reasons, we REVERSE AND REMAND for resentencing.

## BACKGROUND

### A.  Presentence Investigation Report

#### 1.  Offenses of Conviction

The starting point for considering the defendant's challenge to his sentence is the Presentence Investigation Report ("PSI").  According to the PSI, on November 25, 2008, the grand jury indicted

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

the defendant and a codefendant, William Vondell Hickerson, in a nine-count indictment with

conspiracy to sell and selling crack cocaine. The indictment named the defendant in Counts Six,

Seven and Nine:

> Count Six: Sales on April 25, 2008, by Hickerson and defendant. A confidential informant went twice to Hickerson's residence. The first time he bought 1.2 grams of crack from Hickerson. The second time the defendant sold him .6 grams of crack. (PSI ¶¶ 4, 12).[2]

> Count Seven: Sales on April 29, 2008, by Hickerson and defendant. The CI bought 1.1 grams of crack from Hickerson and later .4 grams from the defendant. (¶¶ 4, 13).

> Count Nine: Conspiring with Hickerson and others from December, 2007 to April, 2008 to distribute crack cocaine. (¶ 5). Taking into consideration the sales to a CI and the sales which would have generated the funds found during execution of a search warrant, the total drug quantity encompassed in the conspiracy was 11.36 grams of crack. (¶ 19).

Informants told the Coffee County, Tennessee, Sheriff's Department that Hickerson "was

running one of the largest crack cocaine operations" in the county. (¶ 14). Prior to the defendant's

arrest, he was "residing with" Hickerson "at Hickerson's residence." (¶ 56).[3] According to Count

9 of the indictment, the defendant had begun his conspiratorial activities with his codefendant by

December, 2007 – within seven months of parole after serving over five years of a twenty-five year

sentence for aggravated robberies and robbery (as described below). (¶¶ 5, 43).

---

[2] Unless otherwise indicated, all ¶ references are to the PSI.

[3] The District Judge, perhaps reasonably, could have inferred that defendant had participated in other drug sales while residing with Hickerson. He did not, however, mention any such inference during the sentencing proceeding.

## 2. Guideline Calculation

### a. Without Career Offender Enhancement: 70-87 Months

As initially calculated, the defendant's base offense level, based on 11.36 grams of crack cocaine and crediting him with a three-point reduction for acceptance of responsibility due to his guilty plea, was 21.

The defendant's criminal history category was V. This was based on a computation of twelve criminal history points, which the Probation Officer assessed on the basis of:

- 1998 sale of two rocks of crack cocaine for $20.[4]     3 pts.

- 1998 criminal impersonation; possession of narcotic equipment; traffic offense.     1

- 1999 theft of property between $500 and $1000.     1

- Driving without a license; evading.     1

- Aggravated robbery with a weapon (four counts); robbery (one count).[5]     3

- Add-on for committing the instant offenses while on parole     2

- Add-on for committing the instant offenses less than two years after release from custody     1

---

[4] As discussed below, this was a predicate conviction for Career Offender purposes.

[5] These are predicate convictions for Career Offender purposes.

3

Total                                                                              12 [6]

The sentences for the first four counted convictions were: 1) crack cocaine – three years, with release from a boot camp after four and a half months, to probation, revoked for absconding;[7] 2) impersonation, etc. – forty-five days at 30%; 3) theft – unknown; and 4) traffic offense – thirty days.

The four counts of aggravated robbery and one count of robbery resulted in a sentence of twenty-five years. The defendant's sixteen-count indictment resulted from a month-long crime spree between December 15, 2000, and January 17, 2001. The indictment included twelve counts of aggravated robbery, two counts of "especially aggravated kidnapping," one count of robbery, and one count of attempted robbery. The defendant pled to the indicated four counts of aggravated robbery and one count of robbery. He served five years and five and a half months until being paroled on May 9, 2007. Five months later a parole violator warrant issued. With an adjusted offense level of 21 and criminal history category of V, the defendant's guideline range would have been 70 - 87 months.

### b. With Career Offender Enhancement: 188-235 Months

Seventy to 87 months was not, however, the applicable range.

The probation officer applied the career offender enhancement under § 4B1.1 based on the 1998 two-rock crack cocaine and 2001 robbery convictions. This automatically increased the

---

[6] Additional convictions not leading to imposition of criminal history points, were: 1998 - trespassing (¶ 38), 1999 - impersonation (¶ 40), and 2000-2001 - robberies (¶ 43).

[7] The District Judge might reasonably have taken defendant's previous probation and parole revocations, as well as time served, into account when determining the sentence. But he did not allude to this part of the defendant's record.

defendant's base offense level to 34 and his criminal history category to VI. With a three-level reduction for acceptance of responsibility, the result was a guideline range applicable at sentencing of 188-235 months.

### 3. Other Pertinent Information in the PSI

The PSI referenced the defendant's drug addiction. In addition, the PSI stated that the defendant reported he suffered from manic depression since he was a juvenile, and had been treated for depression, a suicide attempt and substance abuse in 1998. (¶ 59). The PSI does not otherwise confirm the self-reported manic-depression diagnosis.

During an earlier incarceration the defendant received his GED. (¶ 62). His employment record was sparse. The probation officer was unable to confirm his employment with the entities for whom the defendant had told the officer he had worked. (¶ 64). When arrested, the defendant had no income, assets or liabilities. (¶ 65).

### B. Sentencing Proceedings

The defendant's attorney filed a motion for downward departure on October 14, 2009. (R. 76). This filing, the Judge noted at the outset of the sentencing hearing, was "a couple of days late." (Sentencing Tr. 2/lines 12-13). The Judge also correctly observed that the request, though styled as one for a downward departure, more accurately was for a variance from the Guideline sentence. (*Id.* at lines 10-11). The attorney's motion asserted four grounds for deviating from the Guideline range, as enhanced by the career offender designation:

1.  The small amount of crack that the defendant sold in 1998 (less than half a gram) and small amounts the defendant himself sold to the CI in this case (one gram);

2.      That, despite the designation of four of his prior robbery offenses as aggravated, he only had a gun in one of the robberies, and that had been a BB gun;

3.      The defendant did not have a leadership role in the offenses of conviction; and

4.      His criminal history category of VI significantly overstated the seriousness of the defendant's criminal history.

The District Judge stated he "had reviewed the file carefully" and had "read both sets of papers. I'm ready to go today." (*Id.*). He then asked defense counsel if he and the defendant were "prepared to proceed today. . . ." (*Id.*). Defense counsel stated he had not seen the government's sentencing memorandum (Tr. 3/lines 4-5), which the court described as "more thorough[]" than the defendant's motion, though filed forty-eight hours after the defendant's untimely motion. (Tr. 2/line 16).

The court, referring to counsel's failure to have seen the government's memorandum as a "problem," told defense counsel, "if you want to make a motion to continue . . . I'd be inclined to grant that motion." (Tr. 3/line 6, 13-14). The court noted that the defendant appeared unhappy with that prospect, and suggested that he and his attorney talk to "decide how we want to proceed on this." (*Id.* at lines 17-18).[8] After a brief recess, the attorney reported that the defendant "has asked that we proceed with the argument, Your Honor, as best we can." (Tr. 4/lines 19-20).[9] The hearing began,

---

[8] The PSI indicated that the defendant wanted his father to attend his sentencing. The defendant's father, following his own release from a fifteen year term of imprisonment, was suffering from cancer. He had been a codefendant with the defendant on at least one of the 2001 aggravated robbery charges. (PSI ¶¶ 43, 57).

[9] The record does not indicate whether defense counsel read the government sentencing memorandum during the recess.

6

though the defendant's attorney acknowledged, once it had been under way, "quite honestly, I would have preferred some more time, but Mr. Ferguson is ready to go forward and I'm at a loss." (Tr. 9/lines 19-20).

This statement came after the court had confirmed that the plea agreement was fair, there were no objections to the PSI, and the Guideline range was 188-235 months. (Tr. 5/line 6 - Tr. 6/line 15). The court then asked defense counsel, "why don't you go ahead and summarize your motion," which, in the court's view, "deals principally with the two predicate offenses for career offender status." (Tr. 7/lines 6-9). Counsel agreed that was the gravamen of the motion.

This led to a colloquy about the four aggravated robbery convictions resulting from the defendant's month-long crime spree. Defense counsel stated, "apparently, during three of those counts, Mr. Ferguson didn't even have a weapon. . . ." (Tr. 7/line 25 - Tr. 8/lines 1-2). When the judge asked, "What is your basis for saying that," defense counsel repeated his assertion that "[that] apparently was part of the underlying factual basis . . . was that he never had a weapon" aside from a BB gun "in one event." (Tr. 8/lines 3-21). Defense counsel noted that he had not represented the defendant during the robbery prosecution, and he thus was "at a bit of a loss." (*Id.* at lines 8-9). However, when the judge repeated his request that defense counsel "tell me what your basis for that contention is" (*id.* at lines 10-11), defense counsel stated, "Simply what Mr. Ferguson had advised that the only time he ever had a gun was in one of those aggravated burglaries [sic] and it was a BB gun." (*Id.* at lines 12-13). On being again asked for "proof," the defense attorney said that he did not have any, "[o]ther than what Mr. Ferguson has told me about the underlying conviction itself. . . ." (*Id.*).

When the court pointed out that the defendant had pled guilty to four counts of aggravated robbery with a weapon, the defendant's attorney noted that the PSI summary referenced a gun as to one robbery. He added, "I don't know why it was termed and that he pled to an aggravated burglary [sic]." (Tr. 9). Whereupon, the court stated, "I don't know how much of a difference this would make, but I'll tell you in my mind this could make a difference." (*Id.*) At this point, the defendant's attorney made his comment about preferring "some more time," but his client wanted to go forward. (*Id.*).

The court then asked the prosecutor to comment. After summarizing the account of the four aggravated robberies in the PSI, the AUSA noted that the defendant was now improperly "trying to collaterally attack these previous convictions that he pled guilty to." (Tr. 9-10). After responding, "Yeah," (Tr. 10) the Judge then stated:

> Well, and as you point out, Mr. Ferguson does have an extensive criminal history. And, you know, over a relatively short period of time which, much of which he was in prison during that period of time.
>
> So, based upon what's before me, Mr. Leonard, I'm going to have to deny your motion for downward departure. I think that under the circumstances that are before the Court, all of the facts that I have, the application of the career offender status to Mr. Ferguson is appropriate. And, therefore, I find that the advisory guideline range of 188 to 235 months is appropriate to address all of the facts and circumstances of Mr. Ferguson's case, as well as his history and characteristics.

(Tr. 10-11).

The Judge thus proceeded without further inquiry into or discussion of the other aspects of the defendant's criminal history or the other points defense counsel had raised in his motion for a

variance, and defense counsel did not object. The Judge said he "would hear" from defense counsel, the prosecutor and the defendant before imposing sentence. (Tr. 11).

Defense counsel began by pointing out that the defendant's co-defendant, Hickerson, though likewise a career offender, had received a sentence of 140 months. The Judge having just told him that he was denying the defendant's request for a variance, the attorney asked for a sentence "at the lower end of the range." (Tr. 11). To this the government responded with a request to sentence within range. It also noted that the "coconspirator did get a sentence of 140 months and he has met with the government and spoken with the government, . . . ." (*Id.*). The court then asked, "Did you say Mr. Ferguson met with the government and spoke with the government?" When the prosecutor acknowledged, "He has," the court then stated, "Hasn't risen to the level of substantial assistance?" The prosecutor responded, "No, it has not, Your Honor." (*Id.*).

The court then called on the defendant to speak. After the defendant had noted, "it all comes from drug abuse" (*id.*), the court stated it would recommend that he "receive 500 hours of treatment from the Bureau of Prisons." (Tr. 14). The defendant concluded his statement in mitigation by noting that he was "not violent at all," his case involved "small quantities of drugs," and he had made efforts to help the authorities: "I met with the government. I've gave, I've gave them some on state sentences, two different cases. I've told them. I've been interviewed by different police authorities and things like that nature." (*Id.*).

Neither defense counsel nor the court asked the government to respond to the defendant's contentions about his efforts to help the government or argue why they were insufficient to warrant

a downward variance.  The court pronounced a sentence of 200 months, which was twelve months above the low end of the range.

The court then noted, "you and you alone are the one that has brought this to pass in your life."  But, the court also stated, "the only good news . . . is that you're a relatively young man[10] and you will come out the other side of this."  (Tr. 14).

The District Judge then stated, "The Court has considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory guideline range, as well as other factors listed in Title 18, United States Code, Section 3553(a)."  (*Id.*).

The court then formally stated the sentence and imposed the 200-month term, a six-year term of supervised release, and recited various conditions of supervised release.  (Tr. 15-16).  He ended the sentencing hearing by informing the defendant of his right to appeal, to which the defendant responded, "I definitely want to appeal."  (Tr. 16).

At the conclusion of the hearing, the Judge asked, "Does either party have any objection to the sentence just pronounced that have [sic] not previously been raised," to which both counsel responded, "No, Your Honor."  (*Id.* at 16).

## DISCUSSION

### A. Procedural Insufficiency

In this appeal, the defendant argues:

---

[10] The defendant was thirty-nine when the court sentenced him.

- The sentencing judge did not: a) address his attorney's arguments for a lower sentence; b) consider the § 3553(a) factors, or c) provide a reasoned basis for the sentence;

- The sentence is substantively unreasonable because the court arbitrarily selected the term of 200 months without considering the § 3553(a) factors; and

- His attorney's failure to include the 100:1 crack/powder cocaine disparity in his argument for a below-Guideline sentence constituted ineffective assistance.

We conclude that the sentence in this case was procedurally unreasonable because the District Judge did not: 1) consider all of the defendant's arguments in support of a downward variance; 2) consider all of the § 3553(a) factorsfailed to: 1) take greater cognizance of the defendant's arguments in support of a downward variance; 2) fully consider the factors which he was required to consider under 18 U.S.C. § 3553(a); and 3) adequately express his reasons, in light of those factors, for imposing a sentence of 200 months.

Our review of the sentence is for procedural and substantive reasonableness. *United States v. Keller*, 498 F.3d 316, 322 (6th Cir. 2007). A sentence is procedurally unreasonable, *inter alia*, where the sentencing judge "simply selects what the judge deems an appropriate sentence without . . . consideration" of the § 3553(a) factors. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (citing *United States v. Booker*, 543 U.S. 220, 222 (2005)). On the other hand, "sentences falling within the advisory Guidelines range," as in this case, "may be considered presumptively reasonable." *United States v. Herrera-Zuniga,* 571 F.3d 568, 582 (6th Cir. 2009) (citing *Rita v. United States*, 551 U.S. 338, 347-51 (2007)).

### 1. Consideration of the Defendant's Arguments at Sentencing[11]

As noted, the defendant's attorney filed a presentencing motion for a downward departure, which the court below properly treated as a request for a variance from the Guideline range.[12] That motion asserted four grounds for a deviation from the enhanced Guideline range:

1. The small amount of crack which the defendant sold in 1998 (less than half a gram) and the amounts sold to the CI in this case (one gram);

2. That, despite the designation of four of his prior robbery offenses as aggravated, he had only had a gun in one of the robberies, and that had been a BB gun;

3. The defendant did not have a leadership role in the offenses of conviction; and

4. His criminal history category of VI significantly over-stated the seriousness of the defendant's criminal history.

We agree with the defendant that the District Judge should have addressed all four of his asserted grounds for a departure/variance. The judge's omissions in this regard resulted, in part, from how he framed the issue, stating at the outset, "your motion deals principally with the two predicate offenses for career offender status." (Tr. 7/lines 8-10). Instead of then or ever reminding the judge that that was not all, the defendant's attorney agreed with the judge's statement. At that point, moreover, the attorney offered a weak assertion that the defendant had been unarmed during his

---

[11] The defendant's brief argues as its first point the failure to consider the § 3553(a) factors and state the reasons for the sentence. We first address whether the District Judge adequately considered the defense arguments for a departure/variance, then whether the Judge considered the § 3553(a) factors adequately and, finally, whether his statement of his reasons for his sentence sufficed. This is the conventional sequence, which the court followed here at sentencing.

[12] To the extent that the motion asked the court to find the defendant's criminal history category overstated, it requested a downward departure. To the extent it sought a below-Guideline sentence, it asked for a variance.

month-long crime spree, though four of the convictions were for aggravated robbery. The defendant's attorney offered no evidence in support of that assertion. Instead, he merely said that the defendant was his source for that contention. (*Id.* at line 25 - 10/line 14).

Without mentioning the defense attorney's remaining contentions, the Judge found that the Guideline range of 188 - 235 months was "appropriate to address all of the facts and circumstances of Mr. Ferguson's case, as well as his history and characteristics." (Tr. at 10/lines 21-22; 11/lines 2-4). The attorney did not remind the judge, and the judge did not comment on, the rather small overall amount of crack cocaine involved in 1998 and the sales (his and Hickerson's) resulting in his present conviction. The Judge likewise made no mention of the defendant's lack of a leadership role. The court did note, however, with regard to the claim that the criminal history was overstated, that the criminal history was "extensive" and occurred over a "relatively short period of time." Thus, the court overlooked two portions of the defendant's request for a departure/variance: the modest amount of drugs and lack (apparently undisputed) of a leadership role.

This court recently summarized the duty to respond to arguments in support of a variance:

Regardless of whether it may be error to grant a variance without some indication of the reasoning, *discussion of all rejected requests for variances is not required.* "Although Congress requires a court to give 'the reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences." . . . It suffices that *"[t]he record makes clear that the sentencing judge listened to each argument," "considered the supporting evidence," "was fully aware of the defendant's various physical ailments[,] and imposed a sentence that takes them into account."*

*United States v. Lamb*, 431 F. App'x 421, 426 (6th Cir. 2011) (citations omitted) (emphasis supplied).

13

The defendant cites three cases in support of his claim that the sentencing judge failed to give adequate consideration to the arguments counsel made in his presentencing motion: *United States v. Thomas*, 498 F.3d 336 (6th Cir. 2007), *United States v. Richardson*, 437 F.3d 550 (6th Cir. 2006), and *United States v. Buffington*, 310 F. App'x 757 (6th Cir. 2009). The government argues that these cases are not applicable or are distinguishable. To be sure, the Judge's explanation in *Thomas*[13] for rejecting the defense contentions was less complete than the explanation in this case. But that those in *Thomas* were more opaque and abrupt does not make the judge's response to the defendant's contentions here sufficient.

The defendant cites *Richardson*, a case in which the judge expansively explained his reasons for his sentence, 437 F.3d at 554, simply for the proposition that "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it. . . ." The court in that case did so. *See id*. at 552-53. In *Buffington*, the district court carefully considered the pertinent § 3553(a) factors and commented at length on the defendant's criminal history. 310 F. App'x at 761. But that was not enough to avoid a finding of procedural unreasonableness. This was so because, as here, "the judge never specifically addressed three of [the defendant's] four arguments. . . ." *Id*. at 763. Thus, even though the court in that case considered the § 3553(a) factors, this court vacated and remanded for resentencing "[b]ecause the district court

---

[13] "I believe that a sentence of 240 months, given the defendant's background and behavior in this particular case is a fair, adequate and reasonable sentence considering the advisory guideline range that applies, and as well considering the additional factors contained within 18 [U.S.C.] Section 3553(a)." 498 F.3d at 339.

failed to provide a sufficient basis for its rejection of [the defendant's] arguments for a lower

sentence . . . ." *Id.*

The government argues that the court's consideration met the requisite standard:

> The district court stated that it had read Defendant's motion, and it heard oral argument from both parties regarding the merits of that motion. (R. 96, Sentencing Hr'g Tr. at 6-7.) During the course of defense counsel's argument, the district court asked a number of questions. (Id. at 7-9.) And, it ultimately stated that "based upon what's before me . . . I'm going to have to deny your motion for downward departure." (Id. at 10.) Additionally, with respect to Defendant's argument about the sentence received by co-defendant Hickerson, the district court explained that it considers every case individually and co-defendant Hickerson (unlike Defendant) received a downward departure due to the substantial assistance that he provided to law enforcement. (Id. at 11-12.)

(Doc. 006110707161, at 19-20).[14]

The government recites the inarguable point that "a district court need not address in detail

every argument that a defendant raises in support of a lesser sentence because district courts are

afforded 'considerable latitude in deciding which arguments to discuss and how much explanation

is necessary.'" (*Id.* at 20) (quoting *United States v. Mitchell*, 295 F. App'x 799, 804 (6th Cir. 2008)).

The government also cites the statement in *Rita,* 551 U.S. at 356-57 (internal quotations omitted),

that "lengthy explanation of the sentence may be particularly unnecessary where the district court

imposes a within-Guidelines sentence and where a matter is conceptually simple and the record

---

[14] Reading the defendant's submission is not the same as "considering" it. *See Thomas*, 498 F.3d at 341 (where "arguments went unmentioned and unaddressed, save the general statement by the district court that it had received, read, and understood the sentencing memorandum[,] . . . we must conclude that the context and the record do not make clear the court's reasoning.") (internal quotation marks omitted).

makes clear that the sentencing judge considered the evidence and arguments." The government

fails, however, to note the Supreme Court's caveat in *Rita* that where the defendant "argues for

departure, . . . [and] presents nonfrivolous reasons for imposing a different sentence, the judge will

normally go further and explain why he has rejected those arguments." *Id.* at 357.

That is the situation here: the defendant's attorney presented nonfrivolous reasons for

departure/variance. But the Judge failed to "go further and explain why he . . . rejected" one (that

the defendant had been unarmed), glossed over another (overstated criminal history), and left two

(modest drug quantity/non-leadership) of the points defense counsel asserted of four arguments.

Here, as in *Buffington*, failure to address defense arguments for a reduced sentence (even though the

District Judge in that case extensively considered the § 3553(a) factors) supports remand for

resentencing.

In this case, a sentence of nearly seventeen years called for some consideration of the *de

minimis* amount of crack cocaine attributed to the defendant's own conduct. This is especially so

in light of his undisputed lesser role in the overall operation. In sum, the sentencing court's colloquy

with defense counsel did not touch on the most compelling evidence in the record favoring a

downward variance.

### 2. Failure to Consider and Enunciate § 3553(a) Factors

A foundational principle of the sentencing procedure established in 18 U.S.C. § 3553 is that

the sentence is to be individualized: the judge "must make an individualized assessment based on

the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). "In making that determination,"

this court stated in *Herrera-Zuniga*, 571 F.3d at 582, "the sentencing judge is obliged to consider

the unique circumstances of the defendant's case in light of the factors set out by Congress in 18

U.S.C. § 3553(a)."

The § 3553(a) factors pertinent here are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

* * * * *

(5) any pertinent policy statement –

* * * * *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

The sentencing judge need not list each of the § 3553(a) factors. But the record must show

that the judge actually considered those factors. *See United States v. McBride*, 434 F.3d 470, 476

n.3 (6th Cir. 2006) ("While the district court need not explicitly reference each of the section 3553(a)

17

factors, there must still be sufficient evidence in the record to *affirmatively demonstrate the court's consideration* of them.") (emphasis supplied). Thus, while something less than a factor-by-factor recitation is acceptable, something more than a simple and conclusory judicial assertion that the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant" is essential. *Cf. United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) ("there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices.").

Here the District Judge initially focused on the defendant's four aggravated robbery convictions, found that the career offender designation fit the facts he had before him, and the Guideline range of 188 to 235 months was appropriate. As in *Thomas,* 498 F.3d at 340, "the district court considered the applicable Guidelines range, but not much else." In that case, apart from noting "the defendant's background and behavior in this particular case," the district court did not mention the § 3553(a) factors, "save a conclusory reference to considering the additional factors contained within 18 [U.S.C.] Section 3553(a)." *Id*. (internal quotations omitted).

To be sure, the colloquy about the four prior aggravated robbery convictions was somewhat elaborate. But otherwise, the District Judge made only a generalized, nonspecific allusion to "all of the facts and circumstances" of the case "as well as his history and characteristics." The only "characteristics" which the judge specifically mentioned were the defendant's (relatively) young age (39) and how the defendant "alone [was] the one that brought this to pass in [his] life." (Tr. 14/line 4-7). The conclusory reference to the defendant's "history and characteristics" precludes assessment by this court of whether the Judge in fact considered these categories.

18

The only specific factor the Judge addressed among those enumerated in § 3553(a)(2) was the need "to provide the defendant with needed . . . medical care,. . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). That occurred when the Judge said he would recommend 500 hours of drug treatment while the defendant was in the custody of the Bureau of Prisons. (Tr. 12/line 25 - 13/lines 1-8). There was no mention of the seriousness of the crimes of conviction, even when the quantities that Hickerson sold were attributed to the defendant. There is, moreover, no reference to the need to promote respect for the law, provide just punishment for the offense, afford adequate individual or public deterrence against criminal conduct, and protect the public from further crimes by the defendant.

The government contends that the record shows the Judge gave adequate attention to the § 3553(a) factors by determining the Guideline range, noting the defendant's age and emphasizing his criminal history. However, the government is plainly wrong in its contention that the record shows the court also considered "the need for the sentence to 'reflect the seriousness of the offense,' to 'promote respect for the law,' 'deter criminal conduct,' and 'protect the public.'" (Doc. 006110707161, at 14). There simply is nothing in the record, either express or implicit, that indicates the Judge considered any of those important statutory factors.

The government also contends that the principal case on which defendant relies with reference to the Judge's consideration of the § 3553(a) factors, *United States v. Penson*, 526 F.3d 331 (6th Cir. 2008), does not support his challenge to the sentence. To be sure, the Judge's failure in *Penson* to state the factors on which he was relying was even more complete than in this case. In *Penson*, "the district court never verbalized which of [the § 3553(a)] factors were particularly

important to the circumstances of this case or how it selected the sentence in light of these factors."

*Id*. at 338.[15] While here the Judge alluded to the defendant's need for drug treatment, mentioned his age and focused on his criminal history, whatever consideration he gave to any of the other factors is not manifest in the record. Here, as in *Penson*, the Judge "left us no record on review showing that [he] considered the § 3553(a) factors." Here, as there, though the record contains something, it simply is not enough to show that the Judge adequately considered the § 3553(a) factors.

These factors are a crucial and congressionally mandated check on arbitrary sentencing. While this court has often granted some leeway to District Judges in their handling of the § 3553(a) factors, a lack of attention to all but one or two factors is insufficient.

## B. Failure to Explain Reasons
### for Imposing a 200-Month Sentence

Section 3553(c)(1) requires the court, even when imposing a within Guideline range sentence, to state its reasons for the particular sentence:

(c) **Statement of reasons for imposing a sentence**.– The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence–

(1) is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; . . . .

---

[15] The decision in *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005), speaks principally to the insufficiency of the judge's statement of reasons for a downward variance. The court also pointed out, however, that, "in determining the sentence, the district court must consider the advisory provisions of the Guidelines and the other factors identified in 18 U.S.C. § 3553(a)." *Id.* Just as here, the court there did not do so, and this court vacated the defendant's probationary sentence and remanded for resentencing.

No. 09-6297
*United States v. Ferguson*

As this court stated in *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008):

> [W]e have consistently held, post-*Booker*, that a sentence may be procedurally unreasonable if the district court did not consider the applicable Guidelines range or neglected to consider the factors set forth in 18 U.S.C. § 3553(a), and instead simply chose a sentence that the judge deemed appropriate. *See, e.g., [United States v.] Collington*, 461 F.3d [805,] 808 [(6th Cir. 2006)]. We further require that the district court explain "its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Trejo-Martinez*, 481 F.3d 409, 412-13 (6th Cir. 2007); *see also United States v. Lonnie Davis*, 458 F.3d 505, 510 (6th Cir. 2006) ("The district court's thorough consideration of the § 3553(a) factors certainly allows for intelligent appellate review."). Moreover, the district court should set forth enough facts to satisfy this court that it considered the parties' arguments and had a reasoned basis for exercising its own legal decision-making authority. *Rita [v. United States*, 551 U.S. 338, 356 (2007)].

As *Vowell* suggests, an adequate statement of reasons is a precondition of meaningful appellate review of a sentence. But the requirement of a statement of reasons does more than merely facilitate review by this court. In addition, the statement of reasons for a sentence, as delineated in *Rita*, 551 U.S. at 356:

- Confirms that the sentencing judge "has considered the parties' arguments." *Id.*

- Shows that the judge "has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 336-337 (1988));

- Creates "[c]onfidence in a judge's use of reason," which "underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Id.*

- Informs the Sentencing Commission and thereby "help[s] the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." *Id.* at 358.

Of equal importance to any of these objectives, an adequate statement of reasons tells the defendant why the judge is imposing the specific sentence. An uninformed defendant is likely to be

21

an embittered defendant. An informed defendant may be more accepting of the sentence and embark upon it more willing to work towards a law-abiding future. *See id*. at 357 (noting that a judge's "speak[ing] at length to a defendant . . . may indeed serve a salutary purpose.").

The judicial statement of reasons, especially "when a judge decides simply to apply the Guidelines to a particular case, . . . will not necessarily require lengthy explanation." *Id*. at 356. Thus, where "[c]ircumstances . . . make clear that the judge rests his decision upon the [Sentencing] Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates)" and "the judge has found that the case before him is typical, . . . the judge normally need say no more. " *Id.* at 357. The Court also stated in *Rita*:

> Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation.

*Id.*

In sum, assessing the adequacy of a judge's statement of reasons requires looking at the quality and content, not the quantity of the judge's words. Here the Judge's statement of why he rejected the defendant's request for a downward variance was merely conclusory. (Tr. 10-11). This case, as defendant argues, resembles *Penson,* in which the sentencing judge "provided virtually no explanation giving insight into the reasons for the specific sentence given" nor "verbalized which of [the § 3553(a)] factors were particularly important to the circumstances of this case or how it selected the sentence in light of these factors." 526 F.3d at 338.

22

Likewise, as the defendant also points out, in *United States v. Ross*, 375 F. App'x 502, 508 (6th Cir. 2010), this court remanded for resentencing where "[t]he court made no attempt to actually apply any of [the § 3553(a)] factors to the specific facts of th[e] case or explain why those sentencing factors actually counseled in favor of the imposed sentence." In *Ross*, unlike here, the sentencing court had stated, as its rationale for its sentence, that the sentence "would 'afford adequate deterrence,' 'provide just punishment,' and 'provide the defendant with the opportunity to obtain vocational and educational rehabilitation.'" *Id.* (transcript references omitted). This conclusory recitation of the § 3553(a)(2) factors, the court stated, "failed to provide a sufficient rationale for its sentence on which we can base our review." *Id.*

If mere mention of the factors, as in *Ross*, without connecting them to the individual defendant and his particular history and characteristics does not suffice, then the conclusory assertion the Judge made here – that he had "considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory guideline range, as well as other factors listed in [section 3553(a)]" – is similarly insufficient. This is particularly so in view of the Judge's failure to fulfill the mandate of § 3553(c)(1) that he expressly state "the reason for imposing a sentence at a particular point within the range." Instead, the Judge simply stated:

> I am going to sentence you to – well, I'm not going to sentence you to the very bottom of your range, it's going to be closer to the bottom than it is to the top of your range, but, you know, Mr. Ferguson, I hate to say it, you and you alone are the one that brought this to pass in your life.

(Tr. 14/lines 1-6).

To be sure, "the burden of explanation imposed by 18 U.S.C. § 3553(c)(1) is comparatively modest; a district court must offer 'only a general statement of the reasons for its imposition of the particular sentence.'" *United States v. Fraser*, 647 F.3d 1242, 1246 (10th Cir. 2011) (citing *United States v. Ruiz–Terrazas*, 477 F.3d 1196, 1199-1201 (10th Cir. 2007)); *accord, Rita*, 551 U.S. at 356–57 ("within-guidelines sentence does 'not necessarily require lengthy explanation'").

A district court makes an adequate statement of reasons under § 3553(c)(1) by tailoring its comments to show the sentence was consistent with the sentencing factors of § 3553(a). *United States v. Parrado*, 911 F.2d 1567, 1572 (11th Cir. 1990). No specific language is required when stating the reasons for a sentence, as a district court simply must demonstrate that it was "mindful" of the appropriate factors when imposing the sentence. *Id*. at 1572-73.

This case is similar to *United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir. 2010), in which the sentencing court used terms about the defendant's responsibility for his crimes similar to those the Judge used here:

> Although the district court explained that Hall would be sentenced "for what he did which was to cheat, lie, and steal to enrich himself and which caused great injury to others," . . . and that no one was to blame for the injury to investors "other than Mr. Robert Hall," . . . the district court did not explain why, in view of the factors in 18 U.S.C. § 3553(a), a sentence of 188 months was necessary, much less why the lower sentence that Hall requested would be insufficient. A remand is, therefore, required.

A statement of personal responsibility – which applies to every convicted defendant at every sentencing – is not the kind of "reason" envisioned by § 3553. It says nothing about why the Judge chose 200 months, rather than some other term within the Guideline range. Even when a court sentences, as here, toward the low end of the Guideline range, it must state its reasons for doing so.

*See United States v. Taylor*, 371 F. App'x 375, 385 (4th Cir. 2010) (holding that the judge's statement, "the court has imposed a sentence near the bottom of the range because there are no unaccounted for aggravating factors and because of the defendant's lack of criminal convictions," was insufficient under § 3553(c)(1)).

The court emphasized its view of the defendant's criminal history and, particularly, the four aggravated robberies and another robbery he committed over a one-month span. That consideration was, however, in conjunction with the Judge's decision to deny a downward variance. When pronouncing the 200-month sentence, the Judge gave no explanation of why he chose that figure, rather than some other term. He no doubt had some reasons for concluding, albeit *sub silentio*, that 200 months, rather than the low end of 188 months was "sufficient, but not greater than necessary" to accomplish his sentencing purposes. But we do not know what they might have been, and whether they were proper.

## CONCLUSION

The trial court gave insufficient consideration to the defendant's arguments and reached its decision not to vary without having considered crucial issues. The court focused on the defendant's criminal history to the practical exclusion of all other pertinent factors, failing to mention many of the sentencing factors under § 3553(a)(2). The statement of reasons was simply inadequate. This court is left with a record which we cannot review to any meaningful extent and the defendant is left without an explanation as to why the Judge imposed a 200-month sentence.[16]

---

[16] Having reached our decision on procedural grounds, we need not address the defendant's other two claims (substantive unreasonableness and ineffective assistance of counsel). We are

No. 09-6297
*United States v. Ferguson*

Accordingly, we REVERSE AND REMAND FOR RESENTENCING consistent with the

statements in this opinion.

---

confident that a properly conducted resentencing, aided by fully prepared and effective counsel, will
result in a sentence that makes challenges of either sort most unlikely.

No. 09-6297
*United States v. Ferguson*

**BOGGS,** Circuit Judge, dissenting.

In this case, the essential issue is the adequacy of the district judge's explanation for his sentence. As the majority correctly lays out, especially at pages 14, 16–17, and 19–20, our cases repeatedly indicate that while the judge must give an explanation adequate for us to exercise our responsibility of review, the judge is not required to mechanistically touch on every point raised by a defendant or every factor laid out in the statute. To me, the essence of this dual set of rules is that we are not simply grading the eloquence or thoroughness of the district court's resolution as one might assess a law-school exam. Rather, we are to judge, in a commonsense manner, whether we can understand the basis for the decision and whether that basis is within the very broad sentencing parameters allowed to a district judge, especially after *Booker*. In this case, I part from my learned brethren in that I would hold that the district judge did an adequate job here—at least a job adequate enough to withstand appellate review under the proper standard. As I read the record and statements of the district judge, I understand why he did what he did.

The majority opinion chastises the district judge for not having discussed in more detail various aspects of the defendant's pleadings and arguments. On the other hand, the judge did clearly discuss and understand the defendant's criminal history, the fact that he had not cooperated as much as his co-defendant and not enough to rise to the level of substantial assistance, and his background and circumstances, especially his drug addiction. In particular, at pages 6–11 of the sentencing transcript, the judge extensively engaged the argument that the defendant's criminal history was overstated. He gave defense counsel an opportunity to support that argument and then explained why, in his judgment, defendant's record of violence was fairly represented in the PSR. The

27

marginal nature of the deficiencies for which the district judge is reversed is especially shown by the beginning of the discussion at page 10, point A, where the majority opinion concludes that the judge was unreasonable because he failed to "consider all of the defendant's arguments," "consider all of the § 3553(a) factors," and "adequately express his reasons." The qualified nature of these holdings shows that my disagreement with them is simply one of line-drawing in a very murky area. My reading of the transcript is that the district judge was conscientiously doing his best to fulfill his duties as required by the statute and the guidelines and with the latitude afforded by the Supreme Court's decision in *Booker*.

Could the oral discussion have been longer? Yes. Could it have touched on more points and done so with greater logical structure and rhetorical completeness? Yes. However, does our law—statutory, Supreme Court precedent, and Sixth Circuit precedent—dictate that the district judge must be overturned? To that, I would say no.

From having read many, many transcripts of federal sentencing, especially those since *Booker*, I might give this particular sentencing a lower grade in a law-school course on criminal sentencing than I might have given some other transcripts I have read. However, does it rise (or descend) to the level of unreasonableness. I do not think so.

In addition, the majority's emphasis on the attitude of the defendant on page 20 strikes me as misconceived. While the general sentencing scheme seeks to advance many disparate goals, and while I am sure that keeping the defendant "informed" by giving an explanation is one of them, albeit fairly far down the list in my estimation, I know of no case in which that concern has played a significant role in determining whether or not to reverse a sentence.

In addition, the judge carefully and thoroughly (and accurately, in all estimations) determined the advisory sentencing-guideline range, began with that range, and carefully noted that there was a motion for a downward departure or variance. He then indicated that he had considered not only the record from the court, but also public letters that were submitted and then placed in the record. He interacted with the defense's arguments for a lower sentence and, thus, presumably for a sentence at the low end of the guideline range. Finally, the judge emphasized the violence of the defendant's past history, despite the defendant's efforts to minimize it.

In sum, in this relatively ordinary drug-sentencing case, where the defendant's primary arguments were his comparative lack of culpability relative to a co-conspirator, minimization of the seriousness of the crime, and a plea as to his non-violent nature, I believe what the judge did here was not reversible. I therefore respectfully dissent.