**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0051n.06

**No. 20-1273**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| ZACHARY STEPHEN THOMAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

**FILED**
Jan 26, 2021
DEBORAH S. HUNT, Clerk

---

**BEFORE:** **BATCHELDER, GRIFFIN, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Zachary Thomas pleaded guilty to bank fraud, in violation of 18 U.S.C. § 1344(2), aggravated identity theft, in violation of 18 U.S.C. § 1028A, and the passing of a Treasury check with a falsely made and forged endorsement, in violation of 18 U.S.C. § 510(a)(2). As part of the agreement, Thomas admitted that he stole the mail of numerous Michigan residents, targeting checking and personal identifying information. During sentencing, the district court denied Thomas's objections to a ten-level enhancement to his offense level under the Sentencing Guidelines based on the "intended loss" and two-level sophisticated means enhancement. Thomas appeals the district court's application of the intended loss calculation and sophisticated means enhancement. Additionally, Thomas argues that his sentence is substantively unreasonable. We **AFFIRM**.

## I.    BACKGROUND

### A.    Factual Background

In 2016, Zachary Thomas pleaded guilty to aggravated identity theft.  In exchange for his guilty plea, the Government dismissed a count of false statements and possession of stolen mail. Thomas admitted that for six months he stole mail from residents, deposited checks into one of the many bank accounts he opened online, and cashed fraudulent checks at casinos.  He also admitted that he attempted to obtain $40,000 to $95,000 from the scheme.  The district court sentenced Thomas to the mandatory two years' imprisonment for his aggravated identity theft conviction and placed him on one year of  supervised release, which began on February 6, 2018.  Six months later, the district court revoked Thomas's supervised release for failure to follow his probation officer's instructions, possession of a controlled substance, and leaving the district without permission, among other violations.  Thomas was released in October 2019, after serving a 12-month sentence.

Investigators later learned that during the period Thomas engaged in the probation violations, he also committed mail theft and bank fraud.  Between July and October 2018, Thomas regularly stole mail from Michigan residents, targeting replacement checks, credit card convenience checks, and other financial and personal identifying information.  Thomas used a web-based platform, USPS Informed Delivery, to track and intercept his targets' mail.  As a part of the scheme, when Thomas obtained stolen checks, he made the checks payable to his accomplices or individuals with whom he had a relationship or whose identities he had stolen. Thomas opened and controlled bank accounts of those individuals in order to deposit the stolen and forged checks, withdrawing as much money as he could before the bank froze the account.  In one instance, Thomas obtained a U.S. Treasury check for $141,073.69, deposited it into an account under his control, and withdrew $1,388.31 before the bank froze the account.

The Government charged Thomas in a ten-count indictment related to bank fraud, aggravated identity theft, passing a treasury check with false or forged endorsement, and possession of stolen U.S. mail. Thomas pleaded guilty to three counts: Count 3, bank fraud, in violation of 18 U.S.C. § 1344(2); Count 5, aggravated identity theft, in violation of 18 U.S.C. § 1028A; and Count 9, the passing of a Treasury check with a falsely made and forged endorsement, in violation of 18 U.S.C. § 510(a)(2).

### B.     Procedural Background

For Guidelines range calculation purposes, the U.S. Probation Office's Presentence Report grouped Counts 3 and 9 as "Count Group 1." The PSR included a base offense level of seven for Count Group 1, a ten-level enhancement for intending loss over $150,000, a two-level enhancement for ten or more victims, and a two-level enhancement for sophisticated means, resulting in a total adjusted offense level of 21. The PSR suggested a two-level departure for acceptance of responsibility and a one-level departure for assisting authorities with investigation or prosecution, reducing the total offense level to 18. It also recommended that the term of imprisonment on Count 5 be served consecutively to any other counts. The Government calculated a criminal history of six and assigned two additional points for commission of the subject offenses while on supervised release, for a total of eight points, resulting in a criminal history category of IV. As a result, the Government asserted that Thomas's Guidelines range was 41 to 51 months' imprisonment for each count in Count Group 1; and 24 months for Count 5, consecutive to the other counts. The Government argued for 48 months' imprisonment each for Counts 3 and 9, concurrently; and 24 months for Count 5 to be completed consecutive to Counts 3 and 9.

At the sentencing hearing, Thomas's counsel objected to the ten-level enhancement for causing an intended loss over $150,000. He argued that Thomas did not subjectively intend to

obtain the entire U.S. Treasury check and successfully received only $1,388. Thomas also objected to the sophisticated means enhancement.

The district court granted a one-level downward departure to reflect Thomas's cooperation with the Government and a three-level downward adjustment for acceptance of responsibility, resulting in a final Guidelines range of 37 to 46 months' imprisonment for his convictions of bank fraud (Count 3) and passing a Treasury check (Count 9). The district court then considered the unique circumstances of Thomas's case, rejected both of Thomas's objections, and varied upward by two-levels for Count Group 1. Accordingly, the Guidelines range for Count Group 1 increased to 46 to 57 months. The court sentenced Thomas to 54 months each for the bank fraud and passing a Treasury check counts, to be served concurrently, and 24 months for the aggravated identity theft count, to be served consecutively.

## II. ANALYSIS

### A. Intended Loss Enhancement

First, Thomas appeals the district court's denial of his objection to the calculation of the Guidelines range based on the interpretation and calculation of "intended loss." We "review de novo the district court's method for calculating [loss], and review its factual findings for clear error." *See United States v. Maddux*, 917 F.3d 437, 450 (6th Cir. 2019) (citing *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010)). Findings of fact on intended loss in a fraud case "are not to be overturned unless they are clearly erroneous." *United States v. Ellis*, 938 F.3d 757, 760–61 (6th Cir. 2019).

USSG § 2B1.1 addresses offenses involving fraud and deceit and established Thomas's Guidelines range. The loss amount "is the greater of actual loss or intended loss." USSG. § 2B1.1, comment. n.3(A). Intended loss is the "pecuniary harm that the defendant purposely sought to inflict." *Id*. This loss amount includes harms "impossible or unlikely to occur," *United States v.*

*Murphy*, 815 F. App'x 918, 922 (6th Cir. 2020) (quoting USSG § 2B1.1, comment. n.3(A)(ii)), as "their inclusion better reflects the culpability of the offender," *United States v. McBride*, 362 F.3d 360, 374 (6th Cir. 2004) (quoting USSG App. C. at 181 (2003)). "Because of the difficulties often associated with attempting to calculate loss in a fraud case, the district court 'need only make a reasonable estimate' of the loss using a preponderance of the evidence standard." *United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013) (quoting *United States v. Jones*, 641 F.3d 706, 712 (2011)). The district court's "determination is entitled to appropriate deference." USSG § 2B1.1, comment. n.3(C).

Thomas contends that he should not be responsible for the entire $141,073.69 Treasury check because he was aware that there was a limited opportunity to withdraw money and did not intend or expect to receive all of the funds deposited from stolen or fraudulent checks. He received less than one percent of the check amount. Thomas argued that the district court should adopt a loss-amount formula based on the actual loss from the other victims and an averaging formula. The district court calculated the intended loss to be $214,424.96, including the entire U.S. Treasury check of $141,073.69. The court relied on *United States v. Vysniauskas*, 593 F. App'x 518, 524 (6th Cir. 2015), to support Thomas's responsibility for the entire loss amount because he "was going to continue to take as much of that $141,[073.69] as he could until he was stopped."

In *McBride*, we recognized that there is "some point at which a perpetrator's misperception of the facts may become so irrational that the words 'intended loss' can no longer reasonably apply." *McBride*, 362 F.3d at 374. Thomas's perceptions and actions did not rise to that level of irrationality. *See United States v. Jordan*, 544 F.3d 656, 672 (6th Cir. 2008) (approving the district court's inclusion of the total check amount in the intended loss calculation even though the account was frozen before the defendant could actually withdraw the funds). In *Vysniaukas*, we recognized

Case No. 20-1273, *United States v. Thomas*

that an intended loss calculation may include face value amounts of fraudulent checks. 593 F. App'x at 525–26.

Similarly, here, Thomas's intended loss calculation includes the face value of stolen and fraudulent checks he deposited, including the Treasury check. Moreover, Thomas withdrew $1,388.31 from the Treasury check before the account was closed. It is reasonable to infer that Thomas intended to continue, and would have continued, withdrawing and utilizing additional funds from the check had the bank not intervened and frozen the account. *See United States v. Tate*, 136 F. App'x 821, 826–27 (6th Cir. 2005) (upholding an intended loss calculation that included unused checks because it was reasonable to infer that the defendants would have benefitted from the checks, but for an interruption). The district court did not err in finding that the total loss attributable to Thomas's offenses was sufficient to add ten offense levels.

**B. Sophisticated Means**

Second, Thomas appeals the district court's denial of his objection to the two-point sophisticated means enhancement under USSG § 2B1.1(b)(10)(C). "[W]e review the district court's determination that his offense involved sophisticated means for clear error." *United States v. Igboba*, 964 F.3d 501, 510 (6th Cir. 2020) (citing *United States v. Kraig*, 99 F.3d 1361, 1371 (6th Cir. 1996)).

USSG § 2B1.1(b)(10)(C) prescribes a two-level increase for use of sophisticated means. The Guidelines' commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1 comment. n.9(B). Further, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.* A defendant who utilizes an alias to cover up evidence of a crime may

demonstrate sophisticated means. *See Igboba*, 964 F.3d at 512 (citing *United States v. Crosgrove*, 637 F.3d 646, 667 (6th Cir. 2011)). We have also held that "funneling of transactions through relatives in order to disguise the origin of funds is sufficient to support an enhancement for sophisticated means." *United States v. Erwin*, 426 F. App'x 425, 437 (6th Cir. 2011) (citing *United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009)). Even if the conduct does not appear to be particularly intricate on its face, the enhancement may still apply. For example, in *United States v. Simmerman*, 850 F.3d 829 (6th Cir. 2017), we upheld a sophistication enhancement where the defendant's embezzlement actions were not particularly complex, but she employed sophisticated methods to evade detection, including using dormant accounts or family members accounts to hide stolen money and manipulating a computerized accounting system. *Id.* at 833.

Thomas contends that his sophisticated means enhancement is unmerited because there was nothing complex or intricate about his conduct beyond the actual commitment of the crime. The district court found that Thomas used sophisticated means to execute his crime, noting that Thomas "use[d]. . . technology [to track] mail and numerous other means . . . described in the presentence investigation report" to commit the fraud.

Here, viewing the totality of the circumstances, Thomas's conduct was sufficiently intricate or complex to warrant a sophistication enhancement. The PSR prepared by the Probation Office noted that Thomas's fraudulent conduct involved utilizing a tracking technology to discretely monitor and intercept mail from his victims to obtain financial information. He used multiple email and identification aliases to complete financial transactions and funneled transaction through his associates and loved ones. *See Simmerman*, 850 F.3d at 833 (recognizing that using a sophisticated means to conceal a theft qualifies as a predicate for the § 2B1.1(b)(10)(C) enhancement). In light of the totality of Thomas's conduct, the district court did not clearly err in

imposing the two-point sophistication enhancement. *See United States v. Masters*, 216 F. App'x 524, 526 (6th Cir. 2007) ("[I]t is the totality of the defendant's conduct—the entire scheme—that the district court found was carried out using 'sophisticated means.'").

### C. Substantive Reasonableness

Finally, Thomas challenges his sentence as substantively unreasonable. "[W]e 'review a district court's sentencing determination, "under a deferential abuse-of-discretion standard," for reasonableness.'" *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009) (quoting *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)).

*Gall v. United States* instructs us to assess whether an otherwise procedurally reasonable sentence is greater than necessary, considering the defendant's unique circumstances. 552 U.S. 38, 49–51 (2007). A sentence is substantively unreasonable if a district court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019). The court does not need to list each § 3553(a) factor by name, but must offer "more than a simple and conclusory judicial assertion," to justify a sentencing determination. *United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013). "[W]e must respect the district court's reasoned discretion to weigh the factors 'to fashion individualized, fact-driven sentences without interference from appellate courts," *United States v. Perdue*, 818 F. App'x 419, 423 (6th Cir. 2020) (quoting *Boucher*, 937 F.3d at 708), but the justification for a deviation must be "sufficiently compelling to support the degree of variance," *id.* (quoting *Gall*, 552 U.S. at 50). Sentences within the advisory Guidelines range are presumptively reasonable; however, sentences that deviate do not receive the same deference. *Herrera-Zuniga*, 571 F.3d at 582 (citing *Rita v. United States*, 551 U.S. 338, 347–51 (2007)). The greater the deviation, the more compelling the justification must be. *Perdue*, 818 F. App'x at 423.

The district court sentenced Thomas to 54 months for Count Group 1, an eight-month upward variance from the 37 to 46-month range suggested by the Guidelines. The court "considered all of the defendant's arguments in support of his request for a lower sentence," but ultimately selected a two-level upward variance. The court explained the basis of its upward variance: (1) Thomas engaged in "brazen[]" conduct that may serve as an entryway to future fraud; (2) the public needs protection from Thomas's conduct given that the fraud occurred while Thomas was on supervised release for a similar crime; and (3) there were many victims.

Thomas contends that his sentence is substantively unreasonable because the court gave an "unreasonable amount of weight to certain factors" and "ignor[ed] [his] arguments for a lower sentence." He suggests that the factors cited by the court for the upward variance were already accounted for and reflected in the suggested Guidelines range.

We have explained that the district court can rely on "the same facts and analyses. . . to justify both a Guidelines departure and a variance, [but] the concepts are distinct." *United States v. Tristan-Madrigal*, 601 F.3d 629, 635 (6th Cir. 2010) (quoting *United States v. Grams*, 566 F.3d 683, 687 (6th Cir.2009)). Here, while Thomas was previously punished for violating the terms of his supervised release, that penalization was for failure to follow his probation officer's instructions, possession of a controlled substance, leaving the district without permission, and other issues unrelated to the conduct leading to his second plea and sentence.

It is relevant that Thomas's conduct leading to this case occurred while he was on supervised release but resulted in a harm that is distinct from that for which he was previously punished. That Thomas's conduct increased in severity was also important to the district court's reasoning for its upward variance here. *See, e.g.*, *United States v. Williams*, 664 F. App'x 517, 519 (6th Cir. 2016) (noting that the crimes were increasing in severity). The court noted the

"brazenness" of Thomas's second fraud, which included using tracking technology, obtaining false identifications, and utilizing the identities and accounts of others. Moreover, no more than eight months after Thomas "got the benefit of a generous plea agreement" for aggravated identity theft, one of the counts also charged in this case, Thomas engaged in a more sophisticated identity theft and bank fraud scheme. The district court appropriately considered the § 3553(a) factors and did not arbitrarily select Thomas's sentence. The sentence imposed was not substantively unreasonable.

## III.  CONCLUSION

Therefore, for the reasons discussed above, we **AFFIRM** Thomas's sentence.